THE STATE v. DINK LUCAS, Appellant.—292 S. W. 714, 293 S. W. 1051.

Division Two, March 14, 1927.

**1. MURDER: Principal: Case for Jury.** As a mother sat on a porch fronting east towards a public road, about eight o'clock in the evening of April 20th, four or five pistol shots were fired from an automobile passing upon the road, and her five-year-old daughter, held in her lap, was killed. It is conceded that at least defendant and another were in the automobile from which the shots were fired. The mother testified that they were fired from the back seat, and her husband, approaching the house along the public road, saw the automobile pass the house, and heard the shots, and saw the flashes of gun fire just as the automobile was opposite the house. As the car passed him he identified defendant and said other as the sole occupants of said car, and testified that said other occupied the front seat and was driving, and that defendant occupied the rear seat. Held, that the testimony of the mother that the fatal shots were fired from the rear seat and the testimony of the husband that defendant occupied the rear seat, made a case for the jury on the theory that defendant himself fired the fatal shots.

**2. ———: Accessory: Common Plan.** If appellant did not himself fire the fatal shots, but aided, abetted or conspired with the other occupant of the automobile from which the fatal shots came, and as a result of such conspiracy and common plan such other fired the fatal shots, appellant is just as guilty as he would be had he fired them himself. But if said other fired the fatal shots and defendant had no knowledge of his purpose to do so and did not conspire with him to that end, appellant is guilty of no crime at all, although he and said other occupied the car from which the shots were fired.

**3. ASSIGNMENTS: Indefinite.** Assignments of error which are not set forth in the motion for a new trial with sufficient definiteness to meet the requirements of Section 4079, Laws 1925, page 198, cannot be considered upon appeal.

**4. ———: Demurrer to Evidence: Murder and Manslaughter.** An instruction telling the jury that under the law and the evidence they should acquit the defendant should be refused (a) where there is substantial evidence

that defendant fired the fatal shot, that the shooting was malicious and deliberate and that he was therefore guilty of first degree murder, or (b) where the information contains charges ranging from murder in the first degree down to manslaughter and there is substantial evidence tending to show that defendant, at the very least, was guilty of manslaughter, in recklessly shooting into a house wherein he knew people were living, even if he did not know that they were on the porch at the time the shots fired killed a child in its mother's arms.

5. ————: **Indefinite: Elements of First Degree Murder: Shooting to Scare Another: Discussion.** Where there was substantial evidence tending to show that the act of shooting was a deliberate act, done in furtherance of a design to kill the father of the child hit by the fatal shot, and defendant did not in his motion for a new trial assign as error the giving or refusal of instructions with the particularity required by the Act of 1925, Laws 1925, page 198, the court will not on appeal enter into a consideration of the law applicable if defendant fired into the house of the father for the purpose of scaring him or for some purpose other than that of killing him. In view of such indefinite assignment, the court will not enter the field of discussion, invited by appellant in his brief, of a contention to the effect that, if the shooting was merely done in the commission of or an attempt to commit a felony, other than arson, rape, robbery, burglary or mayhem, and not by means of poison or lying in wait, the killing was not murder in the first degree.

6. **MURDER: Evidence of Motive and Conspiracy: Making Whiskey.** The theory of the State being that the father of the child killed by the fatal shot was interfering with the operations of appellant and another occupying the automobile, in making whiskey illegally, and had set the officers upon them, and that appellant and said other were endeavoring to drive the father out of the country, or at least away from their premises, by threats and a show of actual violence, or that the shots were fired with intent to kill the father, testimony relating to a still and its operation by said other was admissible (a) as tending to prove a motive for the commission of the murder and its malicious and deliberate character, and (b) as tending to establish a conspiracy between defendant and said other to drive the father away or to kill him or to do him great bodily harm.

7. **ARGUMENT TO JURY: Conclusion Drawn from Facts.** For counsel for the State, in his argument to the jury, to draw a conclusion from facts and circumstances that a man who would do certain things is "a demon in human shape" is not prejudicial error; and particularly so where the trial court instructs the jury to disregard the words and defendant's counsel simply excepts.

8. ————: **Motion for New Trial: Reference to Pages of Bill of Exceptions.** An assignment in the motion for a new trial that the court erred in permitting counsel for the State in his argument to the jury to make the remarks set out on certain pages of the bill of exceptions preserves nothing for review. The bill of exceptions is not and cannot be filed until sometime after the motion for a new trial is prepared and filed; and if to the motion for a new trial is attached a copy of the remarks, as they later appear in the bill, the motion, with those remarks attached, should appear in the bill, in the very words in which they were presented to the trial judge. [In part on Motion for Rehearing.]

9. ————: ————: **Connection or Context.** The motion for a new trial should show enough of the argument of which complaint is made to show the connection in which the remarks objected to were made. [On Motion for Rehearing.]

10. ————: **General Objection.** A general objection to the remark of the counsel for the State that the man who makes "this damnable concoction

they now call moonshine whiskey and sells it to his neighbor is no better than a common murderer, in my humble opinion," is not sufficient. Such objection as, "We are objecting to such remarks," is not a legal objection, because it does not advise the court of the particular ground of the objection. And especially so, where the excerpt from the argument does not show whether counsel was referring to activities of appellant, or of his accessory who was not on trial, or of some witness in the case. [On Motion for Rehearing.]

**11. GENERAL OBJECTION: Not Heard by Court.** Objections to arguments of counsel to the jury made in an undertone and not in the hearing of the judge cannot be considered. [On Motion for Rehearing.]

**12. VERDICT: Passion and Prejudice: Inflamed by Testimony Explaining Motive: Indefinite Assignment.** It cannot be ruled on appeal that the verdict for second-degree murder was the result of passion and prejudice, in that the jury were inflamed by the introduction of testimony relating to defendant's connection with the unlawful manufacture of moonshine whiskey, where said testimony was properly admitted, and no specific rulings relating to it have been preserved for review.

Corpus Juris-Cyc. References: **Criminal Law,** 16 C. J., Section 2255, p. 907, n. 20 New; Section 2268, p. 914, n. 30; 17 C. J., Section 3336½, p. 73, n. 80; Section 3349, p. 87, n. 44; Section 3414, p. 125, n. 30. **Homicide,** 29 C. J., Section 45, p. 1072, n. 52; Section 86, p. 1109, n. 83; 30 C. J., Section 407, p. 183, n. 72; Section 559, p. 312, n. 42; Section 570, p. 322, n. 65.

Appeal from Stoddard Circuit Court.—*Hon. W. S. C. Walker,* Judge.

Affirmed.

*Gallivan & Finch* and *Ward & Reeves* for appellant.

(1) There is no conspiracy in this case, and the court erred in the admissibility of testimony and in instructions thereon. Hart v. Hicks, 129 Mo. 104; 8 Cyc. 620; 12 C. J. 540, 543; State v. Porter, 199 S. W. 160. The facts, measured by facts in other cases decided by this court, show that there was no evidence sufficient to attempt to hold the defendant as a co-conspirator. State v. Kennedy, 177 Mo. 98; State v. May, 142 Mo. 135; State v. Porter, 199 S. W. 160; State v. Porter, 276 Mo. 387; State v. Austin, 183 Mo. 478; State v. Loeb, 190 S. W. 303; State v. Daubert, 42 Mo. 241. A conspiracy may be shown by acts and circumstances indicating a joint purpose between accused and the third person to aid each other in the commission of a crime (State v. Harrison, 263 Mo. 657); but the statements by Burgess were incompetent, because: (a) The statements of co-conspirators not made in aid or furtherance of the original conspiracy, are inadmissible against accused. State v. Ferrell, 246 Mo. 322; 8 Cyc. 680; Horton's Criminal Law (10 Ed.) sec. 1405; State v. Bobbitt, 228 Mo. 252; State v. Shields, 296 Mo. 402. (b) Such statements made out of the presence of the defendant by an alleged co-conspirator are only competent to bind the defendant after a con-

spiracy has been shown to exist, that is, the State must first show a conspiracy and then they may show what the co-conspirator said in aid or furtherance of this conspired act. State v. Ross, 29 Mo. 32; State v. Weaver, 165 Mo. 1; State v. Daubert, 42 Mo. 242; State v. Melrose, 98 Mo. 594; State v. Menton, 116 Mo. 605; State v. Frederick, 85 Mo. 149; State v. Walker, 98 Mo. 95; State v. Hicks, 129 Mo. 99; State v. Thompson, 295 Mo. 120; State v. Finley, 234 Mo. 623; State v. Craft, 299 Mo. 332; State v. Austin, 183 Mo. 495. (c) The conspiracy itself must be shown by what the defendant said, or what the third parties knew; it can never be established by what a conspirator (in the absence of the defendant) said about it. Otherwise it would be rank hearsay. State v. Ross, 29 Mo. 50; State v. Daubert, 42 Mo. 241; State v. Frederick, 85 Mo. 149; State v. Hicks, 129 Mo. 105; State v. Kennedy, 177 Mo. 121. Without the state having showed an unlawful agreement, combination or conspiracy to commit a crime or to do an unlawful act, it was erroneous to instruct the jury, authorizing a conviction of defendant on that theory; and it was error to fail to instruct the jury that they must first find a conspiracy before they could first consider the statements of Burgess. State v. Kennedy, 177 Mo. 110; State v. May, 142 Mo. 153. (2) Even under State's theory there is no first degree murder in this case, and such a verdict against this defendant is erroneous. The State's theory is that the defendant and Burgess entered into a conspiracy to ''aid and assist each other in the act of shooting into and at the dwelling house of Miller for the purpose of intimidating and terrorizing said Miller,'' and that if defendant, or Burgess, shot and killed Pauline Miller, defendant is guilty of murder in the first degree. To kill Pauline Miller in an attempt to terrorize Miller by shooting into his dwelling house is merely taking life in an attempt to commit a felony, viz., shooting into a dwelling house, and is not murder in the first degree; because it is only murder in the first degree when defendant kills some person while in an ''attempt to perpetrate any arson, rape, burglary, robbery, or mayhem,'' but does not include any other than the above named felonies. Sec. 3230, R. S. 1919. So that now it is only murder in the first degree to kill a person while attempting to commit the felonies named in the statute, to-wit, arson, rape, robbery, burglary and mayhem. Sec. 1, p. 465, Wagner's Statute 1865; Other Felonies omitted by Amendment, Sec. 1232, R. S. 1879; State v. Shock, 68 Mo. 552; State v. Wagner, 78 Mo. 664; State v. Hopkirk, 84 Mo. 287; State v. Foster, 136 Mo. 653; State v. Bobbett, 215 Mo. 10; State v. Daley, 210 Mo. 664. (3) The court erred in the admissibility of testimony. Throughout the trial, from the opening of the case until the last remarks made by hired counsel in closing argument, the state insisted on appealing to the prejudice of the jury by attempting to connect de-

fendant with the illicit making of liquor. Miller was asked, "Do you know that Burgess and Lucas were in the illegal whiskey business?" And, "Did they know you knew they were engaged in the whiskey business?" Witness was permitted to answer each question and this was error, because: (a) The questions asked for conclusions. State v. Drugel, 248 S. W. 603; State v. Hewett, 259 S. W. 773; State v. Pate, 268 Mo. 431; State v. Davis, 225 S. W. 707; State v. Bostwick, 245 Mo. 483; State v. Evans, 267 Mo. 163. (b) It was offered to show motive, and it is foreign to that question. If offered for a conspiracy it wholly fails to show any agreement or understanding to do any unlawful act to Miller. State v. Porter, 276 Mo. 394; State v. May, 142 Mo. 152; Wharton's Criminal Evidence (9 Ed.) sec. 700; State v. Kennedy, 177 Mo. 122; State v. Porter, 199 S. W. 160; State v. Loeb, 190 S. W. 304.

*North T. Gentry*, Attorney-General, for respondent; *Walter E. Sloat* of counsel.

(1) The evidence was amply sufficient to prove a conspiracy. It is sufficient if the proof shows a prima-facie case, in the opinion of the court; and it is then for the jury to decide, under proper instructions, whether or not one really exists. State v. Kennedy, 177 Mo. 131; State v. Darling, 199 Mo. 201; State v. Roberts, 201 Mo. 723. (a) A conspiracy may be proven by circumstantial evidence. State v. Walker, 98 Mo. 104; State v. Miller, 191 Mo. 608; State v. Fields, 234 Mo. 623; State v. Kolafa, 291 Mo. 347; State v. Kinnoman, 285 S. W. 64. (b) A statement made by one of the parties during the existence of a conspiracy, and bearing upon the object or purpose of such, is admissible against all. State v. Shields, 296 Mo. 402; State v. Samis, 296 Mo. 486. (2) Where there is any substantial evidence of guilt the weight of the evidence is for the jury. If there be no substantial evidence, the question is one of law for the court. In the instant case it was a question for the court to pass on whether or not there was any substantial evidence of deliberation. The weight of such evidence was then a question for the jury. State v. Maggard, 250 Mo. 340; State v. Concelia, 250 Mo. 424; State v. Taylor, 261 Mo. 229; State v. Roe, 180 S. W. 883; State v. Sadowski, 256 S. W. 756; State v. Mitchell, 262 S. W. 718. (a) A homicide committed in the perpetration of one of the felonies mentioned in Sec. 3230, R. S. 1919, is not a distinct offense. It is only one of the methods by which murder in the first degree may be committed, and is the legal equivalent of premeditation, deliberation or malice aforethought, which otherwise must be proven to sustain a charge of first degree murder. State v. Meyers, 99 Mo. 113; State v. Daly, 210 Mo. 679; State v. Bobbitt, 215 Mo. 33; State v. Garrett, 276

Mo. 312.   (b)  The defendant and his former codefendant have been
before this court with applications for writs of *habeas corpus*.  The
evidence submitted before the court at that time was substantially
the same as submitted in the trial court.  This court then held the
evidence to be sufficient to support the conclusion that the killing
was done deliberately.  If it was sufficient to support the conclusion
at that time, the State contends that it was sufficient to submit this
case to the jury.  Ex parte Burgess, 274 S. W. 425; Ex parte Lucas,
274 S. W. 426.   (3)  Where it becomes necessary to show motive,
evidence concerning another crime, when it has a proper connection
between the former offense and the one being tried, is admissible for
the purpose of establishing a motive.   State v. Greenwade, 72 Mo.
300; State v. Matthews, 98 Mo. 128; State v. Dettmer, 124 Mo. 433;
State v. Spray, 174 Mo. 576; State v. Jones, 171 Mo. 407; State v.
Collins, 181 Mo. 260; State v. Rudolph, 187 Mo. 85; State v. Bailey,
190 Mo. 284; State v. Spaugh, 200 Mo. 594; State v. Prunty, 276
Mo. 375; State v. Cummins, 279 Mo. 204; State v. Carroll and Ja-
coy, 288 Mo. 405; People v. Molineaux, 168 N. Y. 264.

BLAIR, J.—Appellant and one John Burgess were jointly charged
with first degree murder for killing one Pauline Miller.  Upon his
separate trial appellant was found guilty as charged.  The jury as-
sessed his punishment at life imprisonment.  Failing to secure a
new trial, he has appealed from the judgment entered on the verdict.

The undisputed facts are:  William Miller and his wife and chil-
dren lived on land belonging to Burgess situated in Stoddard Coun-
ty.  Appellant had the land leased from Burgess.  Miller was appel-
lant's sub-tenant.  Burgess and appellant lived close together on
the south side of the north section-line road.  Miller lived in the
same north half section and west of the road bounding the section
on the east.  On the evening of April 20, 1925, at about eight o'clock,
Mrs. Miller was sitting in the east porch of her home holding in her
lap her five-year-old daughter, Pauline.  Her fourteen-year-old
daughter, Marie, was also sitting on the porch.  Four or five pistol
shots were fired by someone riding in an automobile passing south
along the road.  The shots were directed toward Miller's house.  Sev-
eral of the bullets struck the house.  One of them struck Pauline,
causing her death an hour or so later.  While it was dark at the time,
Mrs. Miller could see that someone occupied both the front and rear
seats of the automobile.  It is conceded that at least appellant and
Burgess were in the automobile from which the shots were fired,
and that the automobile proceeded on around the entire section and
did not stop until it reached appellant's home.

For the State, Mrs. Miller testified that the shots were fired from
the back seat of the automobile.  (Appellant and his son testified

that they occupied the front seat, and that Burgess was in the back seat.)    William Miller testified that he had been to a neighbor's house to the south, and was returning when he saw the automobile approaching and passing his house and heard the shots.    He saw the flashes of gun fire just as the automobile was opposite his house. He stepped to one side of the road and concealed himself.  By the aid of a lamp in a near by window and the headlight from a neighbor's automobile, he was enabled to see and recognize the occupants of the automobile as it passed him.  He identified appellant and Burgess as the sole occupants of the automobile.  He said Burgess occupied the front seat and was driving the automobile, and that appellant occupied the rear seat.   Miller's testimony, in connection with that of his wife that the fatal shots were actually fired from the rear seat, which Miller said was occupied by appellant, made a case for the jury on the theory that appellant himself fired the fatal shots.

But, even if appellant did not fire the fatal shots himself, still, if he aided, abetted or conspired with Burgess to that end and, as a result of such conspiracy and common plan, Burgess fired the fatal shots, then appellant was just as guilty as if he had fired the shots himself.  Of course, if Burgess fired the fatal shots and appellant had no knowledge of his purpose to do so and did not conspire with him to that end, as appellant's testimony tended to show, then he was guilty of no crime whatever.   In attempted support of the issue of common purpose or conspiracy, most of the State's evidence was admitted and, around the admission of such testimony and in connection with the instructions covering same, most of  the alleged errors charged were committed.

We will not attempt to detail all of the facts.   The evidence offered by the State tends to show the existence of bad feeling between Miller on the one hand and Burgess and the appellant on the other. Appellant admitted that Burgess had been operating a still, and it appears that Burgess held Miller responsible for the destruction of the still by the officers.   Appellant and Miller had trouble over the failure or refusal of appellant to give Miller work, as Miller claimed appellant had agreed to do.   They also had some difficulty over the payment of a note given by Miller to a third person, which was signed by appellant as surety, to enable Miller to purchase some stock.    It also seems that appellant guaranteed a doctor's bill for Miller and there was trouble over the fact that Miller had not paid the bill.    Miller claimed that both Burgess and appellant were in the whiskey business and knew that he had reported the existence of their still to the officers.   There was some evidence of threats against Miller by Burgess and appellant, as well as counter threats on Miller's part.    Miller testified that he had seen a pistol in appellant's

pocket earlier on the day of the tragedy. Appellant testified that he did not own and never had a pistol.

Appellant and his son testified that, just preceding the tragedy, they and Burgess started from appellant's home in appellant's automobile to go to the home of one John Horton. Appellant and his son occupied the front seat and appellant drove. To reach Horton's place, they had to pass the house where Miller was living. As they were nearing the Miller house appellant said to Burgess: "Do you reckon Miller will cut the fence down and tear the paper off the house." This remark referred to the expected move from the premises by Miller, as he had agreed. Burgess said: "I will take a couple of shots at the house and that will move him quicker than anything else." Appellant asked him not to do this, saying that it would get them both into trouble, but Burgess immediately fired the shots. Burgess was not called as a witness.

It was fully established by the State and not denied by appellant that the automobile swerved about four feet toward and just in front of the Miller house and that the shots were fired at the house from directly in front of it. The automobile was then about fifty feet from the house. Although it was dark at the time and no moon was shining, it is reasonable to assume that at least the forms of persons on the porch of Miller's house could have been seen at that distance, because Mrs. Miller could see forms in the automobile.

Appellant made no effort to stop the automobile or to go back and see if any damage had been done by the shots, although he claims they were fired against his will and over his protest. He proceeded to drive on around the section and back to his home. They did not stop at the Horton place, which they testified was their destination when they started out. Even when he was told of the serious results of the shots, appellant made no disclosure of his alleged knowledge that they were fired by Burgess. He even visited the Miller premises after the tragedy became known, but made no disclosure of his knowledge. Thus his subsequent conduct appears inconsistent with his story of the shooting.

It appears unnecessary to enter into more minute details as to the facts. It should be stated, however, that a number of witnesses testified that appellant bore a good reputation as a peaceable, quiet and law-abiding citizen. The State offered no countervailing proof in that regard.

Appellant has made several assignments of error which we cannot consider because his motion for new trial, which was filed in October, 1925, was not sufficiently definite to meet the requirements of Section 4079, Laws 1925, page 198. [See State v. Standifer, 316 Mo. 49, 289 S. W. 856, decided at the present term.] For this reason, we will not consider complaints against the instructions, except

the refusal of the instruction in the nature of a demurrer to the evidence. Nor will we consider assignments of error in the admission and exclusion of evidence, except in one respect to be noticed later.

The demurrer to the evidence was Instruction E, which reads: "The court instructs the jury that under the law and the evidence in this case, at the close of all the testimony, you should acquit the defendant." If the trial court had given this instruction it would have told the jury that there was no evidence whatsoever tending to show the commission by appellant of any offense contained in the information, which included charges ranging from murder in the first degree down to manslaughter. As there was substantial testimony that appellant himself fired the fatal shot, there was substantial evidence tending to show *at the very least* that he was guilty of manslaughter in recklessly shooting into the Miller house when he knew people were living therein, even if he did not know they were on the porch at the time. The court, therefore, did not err in refusing to instruct the jury to acquit appellant, as requested in Instruction E.

In this connection, although it may not be necessary to go that far in reaching the conclusion that Instruction E was properly refused, we think there was sufficient evidence to justify submission of the case upon the theory of first degree murder. There was substantial evidence tending to prove that appellant fired the fatal shot. There were facts and circumstances tending to show that such shooting was malicious and deliberate. The jury had the right to draw the inference that persons on Miller's porch at the time could have been seen by appellant as he passed along the road and that the shots were fired at such persons in the belief that one of them was Miller and that the shots were fired with the intent to kill him. If so, the killing of Miller's child was a deliberate killing, just as much as would have been the case had Miller himself been present and been struck and killed by one of the bullets. [Ex parte Burgess, 274 S. W. (Mo.) 423.] The facts and circumstances justified the finding that the act of shooting was deliberate.

We need not enter into the field of discussion, invited by appellant in his brief, that, if the shooting was merely done in the commission of or attempt to commit a felony, other than arson, rape, robbery, burglary or mayhem and not by means of poison or by lying in wait, then the killing was not murder in the first degree. That would offer an interesting field for discussion if the instructions in this case were properly before us for consideration. But, since there was substantial evidence tending to show that the very act of shooting was a deliberate act, in furtherance of a design to kill Miller, and appellant did not assign error in his motion for new trial as to the giving and refusing of instructions in the manner required by the 1925

Act, we are not required to enter into a consideration of the law applicable if appellant or Burgess or both of them merely fired into Miller's house to scare him or for some other purpose than that of killing him.

Assignment No. 9 in the motion for new trial was that: "The court erred in admitting statements and testimony relating to a still and mash which was intended to inflame the jury against the defendant, to which action of the court the defendant objected and excepted at the time."

The theory of the State was that Miller was interfering with the operations of appellant and Burgess in making whiskey illegally and had set the officers upon them and that appellant and Burgess were endeavoring to drive Miller out of the country or, at least, away from their premises by threats and a show of actual violence or that the shots were fired with intent to kill Miller. Such evidence tended to provide a motive for the commission of the crime. If the jury found that appellant was in fact operating, or interested with Burgess in the operation of, a still and that he believed Miller had interfered with his plans in that respect, such evidence tended to establish a reason for the attack on Miller's house. It tended to show that such attack was malicious and was deliberately made in revenge for wrongs, real or fancied, at Miller's hands. It was also a circumstance, taken in connection with other facts, which formed a chain of circumstances tending to establish a conspiracy between appellant and Burgess to drive Miller away or to kill or to do him great bodily harm. No error was committed in the admission of evidence concerning the still and the connection of appellant therewith.

The motion for new trial points out no particular rulings upon this character of testimony, and what we have said applies to the character of the evidence generally, and not to the correctness of any specific ruling made in the admission or exclusion of any particular question or answer. The motion for new trial, as we have above pointed out, does not sufficiently assign error in that respect.

Paragraph VI of the assignments of error in appellant's brief is that "the court erred in refusing to rebuke counsel for the State for improper questions and argument; and in prejudicial remarks made by the court." Paragraph XI of the motion for new trial assigned error because the court permitted counsel for the State to refer to appellant as a "demon in human shape." Upon examination of the bill of exceptions we find that the trial judge apparently sustained appellant's objection to the statement. At least he instructed the jury to disregard it, and an exception by appellant is noted. Whether the exception was taken to the action of the court in not definitely sustaining appellant's objection or to the failure of the court to administer a rebuke as requested, is not clear. The ruling of the court was:

316 Mo.—58.

"THE COURT: I understood him to say if the jury believe that a man did so and so he didn't deserve any sympathy; he was a demon in human shape. He was not stating as a fact that the defendant or any one else was a demon in human shape, but I will instruct the jury to disregard the statement that 'he was a demon in human shape.'

"MR. WARD: We except."

From the statement of the trial judge touching his understanding of the argument objected to, we are unable to see why the jury was even instructed to disregard the argument made. Counsel for the State was apparently merely drawing a conclusion from the facts and circumstances in evidence. [State v. Hart, 292 Mo. l. c. 97-99.]

Assignment XII in the motion for new trial was: "The court erred in permitting counsel for the State in the closing argument to the jury without any testimony of any kind in the record upon which to base the same; the said remarks are as follows: (See pages B and C—which said remarks are set out on pages 249 to 251 inclusive in the Bill of Exceptions)."

Making no point of the fact that appellant failed to state in said assignment what the court improperly permitted counsel for the State to do and assuming that it charged error in permitting certain argument to the jury, the assignment is otherwise entirely inadequate. Appellant has undertaken in the bill of exceptions to give his conclusion as to what remarks were complained of in the motion for new trial, which was before the trial court and has not been brought here. We are entitled to have the motion for new trial appear in the bill of exceptions in the very words in which it was presented to the trial judge. We will not assume that references to pages of the bill of exceptions, in lieu of the actual language of the motion for new trial, correctly show what matter was contained in the motion when it was considered by the trial court. For this reason, whatever remarks of counsel appellant sought to complain of in Assignment XII of the motion for new trial are not properly before us.

Other matters complained of in Paragraph VI in appellant's brief cannot be considered for want of a sufficient antecedent basis therefor in the motion for new trial. The only other assignment of error which may reasonably be said to have been properly presented in the motion for new trial is that the verdict is the result of bias and prejudice on the part of the jury and that the jury was inflamed by the introduction of testimony in respect to appellant's connection with the illicit liquor business. We have held that the admission of that sort of testimony was proper in a general way. Specific rulings have not been properly preserved for review. There is nothing in the record upon which to base the contention that the jury was biased and prejudiced against appellant to any greater extent than was inevi-

table and legitimate under the evidence against him in the case. The mere facts that the jury believed the State's witnesses and disbelieved appellant's witnesses and found appellant guilty of murder in the first degree and fixed his punishment at life imprisonment do not in themselves establish or tend to establish such bias and prejudice. Not a single fact or incident appears in the record from which such conclusion can be reached.

So far as appears from the assignments properly before us, the appellant was fairly tried and was convicted upon substantial testimony by a fair and impartial jury. No complaint is made as to the insufficiency of the information, the form of the verdict or the regularity of the judgment rendered thereon.

It becomes our duty to affirm the judgment of the trial court. It is so ordered. All concur.

### Upon Motion for Rehearing.

BLAIR, J.—In the original opinion we held that appellant had not properly brought to this court remarks of counsel complained of in assignment twelve in the motion for new trial. The copy of the motion for new trial did not contain the matter complained of, but referred to pages 249 to 251 of the bill of exceptions. As the bill of exceptions was not and could not have been prepared until some time after the motion for new trial was prepared and filed below, we very naturally concluded that appellant had not brought the complete motion for new trial here. By leave and in connection with his motion for rehearing, appellant has filed a certified copy of the motion for new trial, and it appears therefrom that the matter contained in pages 249 to 251 of the bill of exceptions was actually attached to the motion for new trial as pages B and C thereof. This was not clearly shown by the copy of the motion for new trial set forth in the bill of exceptions.

There is not enough set out in the first argument of the State's counsel complained of to show the connection in which the argument was made. We are therefore not in a position to rule intelligently concerning the right of counsel to argue that "these defendants fell out." The court ruled that there was no direct statement that they fell out, but that there was evidence that they changed attorneys. We are unable to perceive how the argument could have prejudiced the defense, even if not based upon the evidence.

The objection to argument that a man who makes "this damnable concoction they call moonshine whiskey now and sell it to his neighbor is no better than a common murderer in my humble opinion," was a general objection. It was: "We are objecting to such remarks in this case." An attempted objection in that form constitutes no

legal objection at all, because it does not advise the court of the particular ground of the objection.

Not only that, but the excerpt from the argument does not show whether counsel was referring to activities of appellant or of Burgess (who was not on trial) or of some mere witness in the case.

The third complaint cannot be considered at all because it affirmatively appears from the record brought here that the objection made by counsel for appellant was made in an undertone and not in the hearing of the court. The court made no ruling for the evident reason it did not know any objection was being made. We find no merit in the complaints against the argument which have been brought here by the certified transcript of the motion for new trial.

We have carefully gone over the other matters complained of in the motion for rehearing and find that they were fully and sufficiently considered in the original opinion. We are satisfied that those points were properly disposed of in the original opinion. The motion for rehearing is overruled. All concur.