STATE OF MISSOURI, Respondent, v. JAKE BRADFORD, Jr., Appellant, No. 42470—240 S. W. (2d) 930.

Division Two, June 11, 1951.

Rehearing Denied, July 9, 1951.

*M. Stanley Ginn* for appellant.

*J. E. Taylor*, Attorney General, and *David Donnelly*, Assistant Attorney General, for respondent.

228

WESTHUES, C.—Appellant Jake Bradford, Jr., was convicted in the Circuit Court of Boone County, Missouri, on a charge of an assault with intent to rape. A jury assessed his punishment at imprisonment in the penitentiary for a term of five years. From the sentence imposed he appealed.

The principal points briefed seeking a reversal of the conviction pertain to the admission of evidence including an alleged confession. Appellant also contends that he was not accorded a preliminary hearing and that the evidence failed to show the year the offense was committed.

Appellant filed a plea in abatement stating therein that no preliminary hearing was held. The trial court heard evidence on the plea and found that appellant had waived his right to such a hearing and had been bound over to the circuit court. The principal point urged is that appellant did not understand what he was doing and did not know the meaning of a waiver or the meaning of a preliminary hearing. We are of the opinion that the trial court was justified in overruling the plea on the ground that appellant did waive his right and that he understood that he would be sent to the circuit court where he would have a trial. Bradford had served two terms in the Missouri State Penitentiary and therefore had a speaking acquaint-

ance with court procedure. A deputy sheriff testified as follows concerning what occurred before the magistrate:

"Q. Can you repeat his conversation and words?

"A. No, sir, I cannot, except he finally—after the Judge interrupted him and told him it was not necessary to confess to him, or something similar to that, and asked him if he understood what a preliminary hearing was,—he said 'No, but I want to go ahead and be 'victed.' The Judge spent a good deal of time trying to explain what a preliminary was, and he said 'I want to waive it and go on up to a higher court,'—in a rambling form."

We do defer to the ruling of the trial court and deny appellant's contention. 22 C. J. S. 487, Sec. 333; State v. Miller, 331 Mo. 675, 56 S. W. (2d) 92, l. c. 94(1).

The evidence showed that on a Saturday night, November 26, at about ten or eleven o'clock, the prosecutrix in this case, then eighteen years old, was in a downstairs room at her home in Columbia, Missouri. She had been reading and listening to a radio and while doing so fell asleep on a divan. Her grandmother was upstairs and her parents were not at home. Prosecutrix awoke and saw a Negro man approaching her. He grabbed her and the evidence showed that the intruder pulled the prosecutrix into the dining room and then onto the porch where he threw her on a cot. The disturbance and screams were heard by the grandmother who ran down the steps; the intruder fled. We need not detail the evidence further except to state that it was clearly shown that the intruder's intentions were to rape the prosecutrix.

On December 2 police officers of the City of Columbia arrested Bradford on suspicion of trespassing on private property and of window peeping. He was not then suspected of having committed the offense charged against him in this case. Bradford was held in custody and questioned from time to time with reference to window peeping which he freely admitted. On the evening of December 9 the officers learned from Bradford that he had been window peeping in the neighborhood of the home of prosecutrix. On further questioning by the city attorney, who had not theretofore questioned Bradford, it developed that he had been window peeping at the home of the prosecutrix. Bradford did not know who lived at the place and described it as the place where "the tall blonde girl" lives. During the questioning that followed, Bradford described the location of the house correctly and referred to it as a two-story white house which was right. He further stated he had been there three times but saw prosecutrix only twice; that on one night he hid in the weeds and brush near the house and watched prosecutrix undress; that a few days later he returned and found the garage door open and the car gone; that he then knew that the family was gone; that he noticed prosecutrix asleep on a divan. He then related how he entered

the house and made the assault with the intent to rape prosecutrix. There was some discrepancy as to the details and manner of the assault as testified to by prosecutrix and as related by the defendant but as to the main events the two versions did not vary.

After appellant had related in detail the manner in which he committed the assault, the officers took Bradford to the home of the prosecutrix where he showed them what he had done on the night of the assault. While the officers and appellant were on this journey, the questions and answers of appellant's confession were transcribed. When the officers returned with appellant, the transcript was read to him and was signed by appellant and two witnesses.

■ The questioning was commenced about 5:30 P. M. and concluded about 8:30 P. M. The transcript of the confession was signed after midnight. Appellant says that the confession was uncorroborated. To this we cannot agree. Incidental matters which occurred during the time the officers were at the home of prosecutrix indicate that appellant was telling the truth in his confession. For example, when the party approached the house a dog barked and Bradford volunteered the information, "Oh, that dog won't bother you,—it never bothered me." Again someone experienced difficulty with a clothesline. Appellant was asked, "Did you see this before when you were here?" and Bradford answered, "Yes, I damned near hung myself, running through it, when I left."

We also note that in the confession Bradford said he used a nail apron for a mask; that he picked it up near the home of prosecutrix; that it had clothespins in it and that he emptied the apron throwing the clothespins on the ground. A Mrs. Nelson, a neighbor of prosecutrix, testified she had used the apron on Friday and on Monday she discovered it was gone but the clothespins were there on the ground. We could cite more instances but deem the above sufficient. The truthfulness of the confession was supported by many such incidental circumstances.

■ Appellant insists that the confession was not voluntarily made and therefore not admissible in evidence. The trial court out of the presence of the jury heard evidence on this question. The evidence taken showed beyond a doubt that appellant was not mistreated, threatened or intimidated prior to the time he admitted his guilt. The only promise made was that the officers would protect him. There was no evidence of any mob forming but appellant seemed to have doubt about the matter. There was some evidence that appellant was called a vile name; however, that occurred after he had made his admissions. The questioning of appellant was interrupted to permit appellant to eat his supper and appellant was given cigarettes and Coca-Colas. The trial judge was justified in finding that the confession was freely and voluntarily made.

The fact that appellant was in custody from December 2 to December 9 does not alone and of itself render the confession inadmissible on the ground that it was involuntarily made. State v. Higdon, 356 Mo. 1058, 204 S. W. (2d) 754; State v. Ellis, 354 Mo. 998, 193 S. W. (2d) 31.

 A number of newspaper reporters were present while appellant was being questioned by the officers. When the officers went to the home of the prosecutrix with appellant, Stewart Parker, who was the president of the Columbia branch of the National Association for the Advancement of Colored People, talked with appellant. In this conversation with Parker, appellant admitted and also denied his guilt. After some discussion about the matter, Bradford told Parker that he had been in the home of prosecutrix but heard a noise and ran. We hold that the confession was voluntarily made and was admissible in evidence against appellant. Appellant relies upon a number of United States Supreme Court cases contending that the mere fact that appellant was in custody from December 2 to December 9 rendered the confession inadmissible in evidence. The cases relied on are as follows: Chambers v. Florida, 309 U. S. 227, 60 S. Ct. 472, 84 L. Ed. 716; Ashcraft v. Tennessee, 322 U. S. 143, 64 S. Ct. 921, 88 L. Ed. 1192; Watts v. Indiana, 338 U. S. 49, 69 S. Ct. 1347; Turner v. Pennsylvania, 338 U. S. 62, 69 S. Ct. 1352; Harris v. South Carolina, 338 U. S. 68, 69 S. Ct. 1354. In each of these cases there were facts and circumstances indicating the prisoners had been mistreated in addition to having been held in custody without warrant. It does not make any difference in so far as a prisoner is concerned whether a warrant has been or has not been issued. In either case the prisoner is in custody and the fact that a warrant has been issued does not render the confinement any more comfortable. The ultimate question must be, was the confession voluntarily made.

In the Chambers case the court held the prisoners confessed "in hopeless desperation and fear of their lives." They had been questioned almost continuously for a week and finally had an " 'all night vigil.' " The questioners but not the prisoners were served refreshments. How different in the case before us where the prisoner was served his supper and also given cigarettes and "cokes."

In the Ashcraft case the defendant was held incommunicado for thirty-six hours without sleep or rest and questioned continuously.

In Watts v. Indiana, supra, the prisoner was held in jail from Wednesday until the following Tuesday. Much of this time he was in solitary confinement with no place on which to sit or sleep except the floor and was questioned, usually until long past midnight.

In the case of Turner v. Pennsylvania, supra, the prisoner was held for five days and questioned for long hours both day and night. The court stresses the fact that the petitioner was not permitted to see friends or relatives during the entire period of custody. In the

case before us the president of the Columbia branch of the National Association for the Advancement of Colored People was permitted to talk to defendant and the defendant admitted to him he was guilty of the charge.

In Harris v. South Carolina, supra, the prisoner was kept in a small, hot room, questioned daily and nightly, not permitted to see friends or relatives, and the police threatened to arrest his mother. We may observe here that the last three cases were by a divided court and in two of them the vote was five to four. All of those cases presented circumstances much more favorable to the defendant's contention that the confessions were involuntarily made than in the case at bar. This court has not hesitated in declaring confessions inadmissible when obtained through fear, fraud, mistreatment, or promise of immunity. See State v. Butts, 349 Mo. 213, 159 S. W. (2d) 790, 1. c. 792 (2), 140 A. L. R. 1177; State v. Ellis, 294 Mo. 269, 242 S. W. 952; State v. Williamson, 339 Mo. 1038, 99 S. W. (2d) 76, 1. c. 80 (7). The point must be ruled against appellant.

■ Appellant urges that the trial court erred in admitting in evidence the fact that appellant had been "window peeping." The defendant stated when making his admission that he had been window peeping at the home of the prosecutrix; that about two or four nights before the assault he had hidden in the weeds and brush and [934] watched prosecutrix. He further stated that while doing so he committed an act of self defilement. This evidence was admissible as tending to prove motive and intent.

Appellant in his brief says he did not know the meaning of "window peeping"; that he thought it meant looking into windows as he walked down the street or sidewalk. Appellant, however, on the night he made his admissions demonstrated to the officers how he had been window peeping at the home of the prosecutrix. At that time according to his own statement he well knew the meaning of the term. If window peeping is a crime in the City of Columbia as appellant contends, that fact does not render the evidence inadmissible. If evidence is competent, the mere fact that it discloses the commission of a separate offense does not render the evidence incompetent. State v. Hepperman, 349 Mo. 681, 162 S. W. (2d) 878, 1. c. 884, 885 (5-7); State v. Hawley, Mo., 51 S. W. (2d) 77, 1. c. 78 (4, 5).

■ The last point briefed is that the evidence did not disclose the year the offense was committed. Appellant's confession was taken on December 9, 1949. He was asked if he had recently been in the penitentiary and he answered that he had been there for four years. He was then asked, "How long have you been out?" and he answered, "6 months." He was also asked the following:

"Q. Now have you ever in these three trips you have made out to Fredora (street) in the last few weeks, have you seen the tall, blonde girl out there?

"A. Yes, sir.

"Q. You told Sgt. Wells and I a while ago that you didn't know her name but you had seen her.

"A. That's right. "

Later in the admission appellant stated that in the three trips made to the home of the prosecutrix he did not see the girl on the first trip; that on the next trip he did the window peeping and that on the third trip he made the assault.

. The evidence clearly establishes the fact that the offense was committed shortly before the time appellant made his confession. That sufficiently fixes the year as 1949.

Finding no error in the record, we hereby affirm the judgment. *Bohling* and *Barrett, CC.,* concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.