STATE of Missouri, Respondent,

v.

Charles D. HENDRIX, Appellant.

No. 45819.

Supreme Court of Missouri,
Division No. 2.

March 10, 1958.

Charles D. Hendrix, in pro. per.

John M. Dalton, Atty. Gen., John C. Baumann, Asst. Atty. Gen., for respondent.

EAGER, Judge.

■■ Defendant and one Martin Jones were charged by amended information with damaging and injuring a building in the state penitentiary while convicts therein, and on or about May 7, 1955, by sawing and breaking the iron bars on an outer window. The statute then applicable was § 217.700 (all statutory references are to RSMo 1949 and V.A.M.S. unless otherwise stated); it has since been substantially re-enacted as § 216.460, effective July 14, 1955 (see 1957 Cum.Supp.). Defendant Charles D. Hendrix was tried alone, convicted, and sentenced to three years' confinement, that period to run consecutively with two prior sentences for first degree robbery. He was represented at the trial by court-appointed counsel, who withdrew after filing a motion for new trial, presenting it, and filing notice of appeal. Defendant has filed here, pro se, a three-page document which he designates as a "brief"; it not only fails to comply with our rules (which, under the circumstances, we might overlook), but none of the matters raised therein were assigned as errors in the motion for new trial, except for the bare statement in the "brief" that the jury was prejudiced; nor do any such matters involve the record proper. The preservation of alleged errors in the motion for new trial is absolutely essential, and this will not be waived. State v. Kelly, Mo., 258 S.W.2d 611; State v. Wilson, Mo., 233 S.W.2d 686. If we consider that a brief has been filed under our rules, then substantially all of the assignments of the motion for new trial would be waived under 42 V.A.M.S. Rule 28.02, for the supposed brief does not present them. We shall consider the case as though no brief had been filed, thus reviewing the alleged errors assigned in the motion for new trial. This is not without precedent here. State v. Mace, Mo., 295 S.W.2d 99. We may also note here that the matters attempted to be raised in the pro se brief do not appear to have been presented to the trial court during the trial or thereafter.

The facts may be stated rather simply. The defendant, Martin Jones and Jesse Brown were "celling" together in cell No. 156 of B Hall, in the Missouri Penitentiary. At some time after 9:00 p. m. on May 7, 1955, defendant and Jones went out of a very sizeable hole which had been made by sawing the bars of an outside window. One bar had been sawed in two places; another had been sawed in one place and bent over. The bars were about as thick as one's thumb or finger. An opening of about 15 inches by 17 inches was thus made. Jesse Brown did not seize upon this opportunity. For the descent of about 18 feet

to the ground defendant and Jones used a "rope" about 40 feet long which had been made out of a mattress cover in the cell, and a heavy iron hook made by bending a piece of re-inforcing steel. These two men were found in the yard of the prison at about 2:30 a. m. on May 8, 1955; the location was described as "the lower yard * * * about 300 yards from No. 6 Tower," and about 300 yards from B Hall "over a center wall." They were promptly taken to the deputy warden's office. Roy Casey, an office employee of the prison (whose capacity does not appear) testified that he talked with the defendant there, asked him how he got out, and that defendant said that "he sawed the bars * * * he sawed the bars in the window, the back window"; also, that defendant said he flushed the saw blades down the toilet. This witness also testified that Jones was with defendant in the office at that time, and that the conversation was in the presence of both. The bars were found to have been sawed as stated, and the iron hook, with a piece of the rope attached, was found hanging from the window. On cross-examination Casey testified that the defendant said that "we did" the things in question; also, that defendant then said that a part of the rope was on the "lower yard" and that part was still "back of B Hall" where they had cut it when they could not get it loose.

Martin Jones testified: that he had gotten the hacksaw blades from the machine shop, that he found the piece of re-inforcing steel near some construction work which was going on within the prison, and that he made the rope out of his mattress cover; that he hid the piece of steel under his bed, and hid the saw blades in a secret hiding place in the wall of the cell; that he sawed the bars during the day of the exit, and without defendant's knowledge or assistance; that he kept the bars in place until after 9:00 o'clock that night. He further testified: that he flushed the blades down the toilet, just before they left; that the "rope" was about 40 feet long and that he and defendant went out the window between 9:00 and 11:00 p. m. He said that the defendant answered no questions in the deputy warden's office. Jones was serving a life sentence for first degree murder.

The defendant testified: that he went out the window with Jones, but that he did not cut the bars, and did not plan or conspire to do so; that the first knowledge he had that the bars had been cut was between 7:00 and 9:00 o'clock on the evening in question, when he learned of it from Jones; that he did not know that the bars were going to be cut; that he knew nothing about the saw blades, the piece of steel, or the "rope," stating, by way of explanation, the somewhat quaint truism that "You don't stick your nose in other people's business there." Jesse Brown testified on behalf of the defendant: that he went to the "yard" with defendant shortly after 8:45 on the day in question, which was Saturday, but that Martin Jones did not go; that he and the defendant later returned to the cell together, presumably about 2:00 p. m. This, of course, had some tendency to permit an inference that Jones was in the cell alone. This witness said, however, on cross-examination that while he did not see any hacksaw blades, "I did know something was going on to the effect that there was going to be a break out." There was no objection to that statement, although it did not directly concern any knowledge of the defendant. When asked how he knew that, he said that "there was some discussion in the cell" between all of them, but further stated, by way of qualification: "You hear talk like this all the time"; and that the cutting of the bars had not been discussed between the three "as a definite project," but, "In general, why, I'd say yes."

■ There were no motions for acquittal, oral or in writing. The sufficiency of the evidence has not been properly questioned, but there can be no doubt of its sufficiency for submission in any event, either on the theory that defendant directly participated, or upon the submitted theory of concerted action.

■ We shall consider together those assignments of the motion for new trial which concern the admission of evidence, for they really stand or fall together. Generally, they allege that it was error to admit irrelevant evidence relating to: (a) defendant's "location" at the time he was apprehended; (b) "a certain rope" made from a mattress cover; (c) the hook made from the iron bar; and (d) Jones' testimony concerning "the mechanics of his escape." The objection of irrelevancy was assigned as to (a), (b) and (c); no specific ground of error was assigned as to (d), but it was alleged that the prosecuting attorney represented that "he would connect it up" and that he failed to do so; we find no such incident in the record. We shall consider the entire group of evidence from the standpoint of relevancy, although as to (d) the assignment is probably insufficient. We do not find that the "rope" or the iron hook were offered as exhibits; the assignments necessarily refer merely to the evidence concerning them. The theory of counsel in the motion apparently was that all this evidence tended to charge the defendant, prejudicially, with an escape or an attempt to escape, both of which were outside the scope of the present information. Undoubtedly evidence concerning the rope, the hook, and the finding of defendant and Jones in the yard tended directly to show that both defendant and Jones had made their exit through the opening in the severed bars. This evidence was admissible to connect each and both of them, circumstantially, with the cutting of the bars and with a concert of action. It is generally true that proof of another crime not related to the cause on trial cannot be shown. State v. Leonard, Mo., 182 S.W.2d 548; State v. Atkinson, Mo., 293 S.W.2d 941; State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920; State v. Ingram, Mo., 286 S.W.2d 733; State v. Griffin, Mo.App., 289 S.W.2d 455; but there are very definite exceptions to this rule. In State v. Saussele, Mo., 265 S.W.2d 290, the court said at loc. cit. 296: "* * * We hold that this was within the rule stated in State v. Kornegger [363 Mo. 968], 255 S.W.2d 765, loc. cit. 768, as follows: 'Where the proof of other offenses may tend to establish motive, or intent, or absence of accident or mistake, or identity of the defendant, or a common scheme or plan embracing the commission of separate similar offenses so interrelated to each other that proof of one tends to establish the other, such other offenses are widely held under these circumstances to be admissible in proof.' See also State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878; State v. Nienaber, 347 Mo. 541, 148 S.W.2d 537; State v. Spinks, 344 Mo. 105, 125 S.W.2d 60; and State v. King, 342 Mo. 975, 119 S.W.2d 277. * * *" See also: State v. Bradford, 362 Mo. 226, 240 S.W.2d 930; State v. Atkinson, supra; State v. Flores, 332 Mo. 74, 55 S.W.2d 953, 955; State v. Garrison, 342 Mo. 453, 116 S.W.2d 23, 25. In the latter case it was said: "* * * 'Evidence covering the commission of other offenses is admissible when two or more crimes are so linked together in point of time or circumstances that one cannot be fully shown without proving the other. * * *'"

The finding of defendant and Jones in the "yard" at 2:30 a. m. on May 8, 1955, and the surrounding circumstances were clearly relevant to the proof of a common scheme or plan which would embrace both the act of escaping from the building and providing a means of escape, that is, the sawing of the bars. Thus, evidence of the place where they were found and of the means and manner of making their departure constituted circumstantial evidence of the guilt of both on the present charge. They were certainly acting in concert when found; in fact, the sawing of the bars and the escape from the building may logically be found to be parts of one transaction. The hook and a part of the "rope" were found hanging from the window in which the bars had been sawed. Both had admittedly used these implements; they were later found together some distance from the building. All this evidence was admissible. Such being true, the further assign-

ment that the court erred in failing to instruct the jury to disregard part of this evidence is without merit.

■ The next two assignments concern the failure of the court to declare a mistrial, both on motion of defendant's counsel, and of its own motion. Counsel moved for a mistrial when Roy Casey stated: "I asked him how he got out of his cell. He said he got out * * *." The stated ground of the motion was "for going outside of the crime charged." Our ruling on the admissibility of evidence covers this point. The "escape," though uncompleted, was so closely interwoven with the sawing of the bars that, as a practical matter, the two could not well be separated. All circumstances of the "escape" were relevant to the proof of the charge on trial, especially since a concert of action was submitted in the instructions, and would normally be sufficient for conviction. This being true, the court certainly could not have been guilty of error in failing to declare a mistrial in any other instances (not specified) where the element of "escape" appeared.

■ Counsel assigned error in the failure of the court to declare a mistrial of its own motion during the final argument of the prosecuting attorney when (allegedly) the latter said that defendant was trying to escape "to attack, molest and intrude upon the members of the jury and other residents of Cole County." The nearest resemblance which we find to such a statement came immediately following the argument that the state could not employ guards to watch every individual convict; the prosecutor then stated that the legislature intended that the statute in question be enforced, " * * * for the benefit of the state, particularly for the benefit of the people of Cole County, because the people of Cole County are the ones who suffer when that law and the other laws of the State of Missouri are violated. The courts here in Cole County can't enforce that law or any other law unless the juries here assess the punishment that will be a lesson, not only to this man, but a lesson to every other inmate. * * *" This was hardly a statement of the type charged in the motion. No objection, request, or motion was made at the time. We considered a somewhat similar contention in the case of State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, where the argument was certainly more inflammatory than the present one (see, particularly, loc. cit. 306); it was there denied. In that case we said, in part: "It has long been held that so long as a prosecutor stays within the record and its reasonable inferences, he may legitimately argue the necessity of law enforcement as a crime deterrent, and he may argue also that the responsibility for the suppression of crime and the protection of the public rests upon the trial juries. State v. Nasello, 325 Mo. 442, 30 S.W.2d 132, 142, 143; State v. Lynn, Mo., 23 S.W.2d 139, 141; State v. Marshall, 317 Mo. 413, 297 S.W. 63, 69; State v. Lucas, 316 Mo. 904, 292 S.W. 714, 717, 293 S.W. 1051; State v. Murray, 316 Mo. 31, 292 S.W. 434, 438. * * *" And see State v. Rhoden, Mo., 243 S.W.2d 75. In the present case the argument made was certainly not so inflammatory as to make the failure of the trial court to intervene of its own motion an abuse of its discretion. In such matters a trial court is permitted great discretion. We do not hold that the argument was ground for declaring a mistrial, even upon motion.

■ The final assignment is that the verdict was the result of passion and prejudice engendered by the erroneous admission of the evidence discussed above, and by the argument of the prosecutor concerning "the alleged attempted escape." We have held that the admission of such evidence was not erroneous. If the evidence was admissible, the prosecutor certainly might comment upon it. In the light of these rulings there could be no "prejudice" in a legal sense. There is certainly no independent showing here of any actual prejudice on the part of the jury.

■ The foregoing disposes of the assignments in the motion for new trial.

We have examined the amended information, the verdict, and the judgment and sentence. The verdict found defendant guilty "in the manner and form as charged in the information * * *," not specifying the offense. However, this form of verdict has been held sufficient. See State v. Jackson, 283 Mo. 18, 222 S.W. 746; State v. Hannon, Mo., 7 S.W.2d 278; State v. Dees, Mo., 276 S.W.2d 201, 206. At least this is true where, as here, the instructions fairly submitted to the jury "the facts charged in the information." State v. Dees, supra. See generally State v. Saussele, Mo., 265 S.W.2d 290. The record does not show affirmatively that in granting allocution defendant was "informed by the court of the verdict of the jury * * *," as required by Rule 27.09; defendant was asked if he had any legal cause to show why judgment should not be "passed upon him." It would be preferable to follow that Rule, but by virtue of Rule 27.10 the requirements of Rule 27.09 are made merely directory where the defendant has been heard on a motion for new trial, as was done here. We note also that the entry of the judgment and sentence does not state in accordance with Rule 27.11 the offense for which the conviction was had; defendant was sentenced, however, "in consideration of the verdict of the jury heretofore entered * * *"; and Rule 27.11 provides that an omission of the duty thereby imposed shall not affect or impair the validity of the judgment or sentence. Defendant was found guilty of the offense charged in the information, and that could refer only to the injuring and damaging of a state building. We find no material insufficiency in these proceedings. It would seem better to follow the forms specified in the Rules.

Finding no reversible error, the judgment and sentence are affirmed.

STORCKMAN, P. J., and ELMO B. HUNTER, Special Judge, concur.

LEEDY, J., not sitting.