**STATE of Missouri, Respondent,**

v.

**Norman LUNSFORD, Appellant.**

No. 47668.

Supreme Court of Missouri,

Division No. 2.

Feb. 8, 1960.

James J. Rankin, St. Louis, for appellant.

John M. Dalton, Atty. Gen., Julian L. O'Malley, Asst. Atty. Gen., for respondent.

STORCKMAN, Judge.

The defendant Norman Lunsford and Bobby Lee Griffin were jointly indicted for the murder of Wesley Huson. The defendant Lunsford was also charged with previous felony convictions under the Habitual Criminal Act, Section 556.280 RSMo 1949, V.A.M.S. On a separate trial he was found guilty of murder in the second degree as charged. The jury also found that the defendant had been formerly convicted and assessed his punishment in the State Penitentiary for the remainder of his natural life. After his motion for new trial was overruled, allocution was granted and he was sentenced in accordance with the verdict. He has appealed from the judgment of conviction.

■ We have before us the transcript of the record on appeal and the state's appellate brief; the defendant has filed no brief. In this situation the Supreme Court will review the assignments of error properly preserved in the motion for new trial. State v. Ronimous, Mo., 319 S.W.2d 565, 566[1]; State v. Harmon, Mo., 264 S.W. 2d 309[1]. Since the specifications of error in the motion for new trial concern the giving of an instruction. and allegedly improper jury argument by the state, a detailed statement of the evidence is not required.

At the time in question Bradley's Tavern was located at 1023 Lafayette in the City of St. Louis. A row of bar stools extended along the bar from near the front door to the rear of the tavern. During the evening of November 24, 1958, the proprietor, John Bradley, was on duty as bartender. Michael Ogilvy, a serviceman for the juke box in the tavern, was seated on the last bar stool at the rear of the tavern. Seated on the stool next to him was Wesley Huson, a customer and friend of the proprietor.

At about 9:00 p. m., two men, whom Mr. Bradley did not then know, came into the tavern. One of them was later identified as the defendant Norman Lunsford. He first went to the juke box at which time Mr. Bradley and his customers noticed that the defendant had a revolver in his belt. The defendant and his companion then took seats at the bar, the defendant taking the one next to Wesley Huson. There was some conversation between the two and Huson was heard to tell the defendant that he was not scared of him or his gun either. The defendant and Huson got to their feet and the defendant drew his gun, pointed it at Huson and pulled the trigger, but the gun misfired. The proprietor testified that there was no struggle between Huson and the defendant "until the gun was throwed on Huson and it snapped and Huson grabbed the gun." At this point the defendant's companion called out either "Shoot him, shoot him" or "Shoot the son-of-a-bitch, shoot the son-of-a-bitch." The defendant jerked the gun away and again pulled the trigger. This time the revolver discharged and Huson fell to the floor, mortally wounded. A bullet entered Huson's chest and passed through his heart and one of his lungs. As Huson lay on the floor the defendant's companion beat him with a metal bar stool. The defendant continued firing his revolver as he and his companion retreated toward the front door. His last shot hit an icebox and ricocheted into Mr. Bradley's arm and body. Mr. Bradley fired a shotgun at the defendant and his companion when they were near the door but did not hit either of them. Wesley Huson was killed, apparently instantly, as a result of a gunshot wound.

The defendant was arrested a short time later in the crowd that collected at the scene of the shooting. The defendant's criminal agency was well established by the evidence. Four eyewitnesses to the murder identified him positively as the one who fired the fatal shot. Two of the witnesses, J. W. Hendon and John Fraley, had entered the tavern immediately behind the defendant and his companion and took seats near the front of the tavern. A taxicab driver testified he brought the defendant and a companion to the vicinity of the tavern a short time before the crime was committed.

The defendant, twenty-six years old at the time of the trial, took the stand in his own defense and admitted being arrested on the sidewalk in front of 1019 Lafayette while he was watching the police carry the body of Huson from the tavern. However he denied being at the scene more than a few minutes before his arrest and claimed to have ridden there on a public service bus. He denied being in the tavern at any time during the evening and having anything to do with the murder. It was admitted that the defendant had seven felony convictions for burglary, burglary and larceny, and two misdemeanor convictions. He was discharged from the Missouri State Penitentiary on November 15, 1958, nine days before the Huson murder.

The motion for new trial contains two specifications of error. The first is that the court erred in giving and reading to the jury Instruction No. 4, an "aiding and abetting instruction". The reasons urged are that under the state's theory the defendant was the principal since he fired the fatal shot and his companion was the aider and abettor, and that there was no evidence the defendant aided or abetted anyone in the commission of the crime. The defendant contends that the instruction suggests to the jury that he was implicated in some manner other than shown by the evidence, and that the instruction was prejudicially erroneous because it was not based on the evidence.

The instruction is in the usual form of instructions of that nature. In substance it instructed the jury that all persons are equally guilty who act together with common intent in the commission of a crime; that the mere presence of one at or near the scene of the crime however does not render a person liable as a participator; and that if one is only a spectator and does not aid or assist another, he should be acquitted. The instruction concludes as follows: "If, however, a person be present, and by words or actions, aids, abets, assists, advises or encourages the crime, with the intent that the words or acts should encourage and abet the crime committed, then that person is equally guilty with the person or persons who actually commit the physical act." It will be noted that the instruction is definitive and cautionary and does not direct a verdict.

Since the defendant and his companion were present and each actively participated in the assault upon Huson, both of them may be charged, tried, convicted, and punished as principals even though Huson's death was directly caused by only one of them. Section 556.170, RSMo 1949, V.A.M.S.; State v. Lucas, 316 Mo. 904, 292 S.W. 714, 715[2], 293 S.W. 1051; State v. Robinett, Mo., 279 S.W. 696, 699[7]; State v. Schmittzehe, Mo., 3 S.W.2d 235, 238[1].

The effect of section 556.170 has been virtually to abrogate the distinctions between principals and accessories. State v. Butler, Mo., 310 S.W.2d 952, 957. An indictment or information may charge a defendant either as a principal or as an aider and abettor with the same legal effect. State v. Mitts, 315 Mo. 1320, 289 S.W. 935, 937[6]; State v. Shields, 296 Mo. 389, 246 S.W. 932, 934[1].

We cannot agree with defendant's assertion that the evidence showed that if the defendant was not the "principal in the case, * * * he was not there at all and was not guilty of the crime." The evidence was quite convincing that the defendant

was present and participated in the offense. In a practical sense, each was an aider and abettor because the evidence tended to prove that the defendant and his companion both committed overt acts during the progress of the assault which resulted in the death of Wesley Huson.

Even though the evidence tended to prove that the defendant was the actual killer, it is not inconsistent or misleading for the state to instruct on the theory that the defendant was an aider and abettor as well as the actual killer because the greater participation in the offense includes the lesser and the legal effect is the same. State v. Millsap, 310 Mo. 500, 276 S.W. 625, 628[5]. The state's main verdict-directing instruction, of which no complaint is made, is predicated on the theory that the defendant was "acting alone or jointly with another."

In State v. Rozell, Mo., 279 S.W. 705, 709[6], in comparable circumstances, it was held that the giving of an instruction containing elements similar to those in the present instruction was not reversible error. See also State v. Hardin, 324 Mo. 28, 21 S.W.2d 758, 761[8]. On the record before us the instruction did not impose a greater or different responsibility than justified by the law and the evidence. The instruction may have been superfluous but the defendant could not have been prejudiced by it. The assignment of error is denied.

During the state's closing argument the assistant circuit attorney told the jury: "I will not try a case if my heart isn't in it, and my heart is very much in this case, very, very much in it." The defendant objection was sustained and the argument was ordered stricken. Then the court at the defendant's request further instructed the jury to disregard the statement. That was all the relief requested at the time, but after the jury had been deliberating about one-half hour the defendant moved for a mistrial because of the statement made during the state's argument. The request, made in the chambers out of the hearing and presence of the jury, was overruled.

In his motion for new trial the defendant alleges the failure to declare a mistrial was prejudicial error because the argument got before the jury the personal feelings of the assistant circuit attorney from which the jury might infer the prosecutor had knowledge from sources outside the evidence and that the defendant was thereby deprived of a fair trial in that he was denied his right to confront the witnesses and to cross-examine them.

■ A prosecutor is entitled to argue to the jury that in his opinion the defendant is guilty where he states or it is apparent that such opinion is based on the evidence. State v. Burchett, Mo., 302 S.W.2d 9, 16 [4]; State v. Fitzsimmons, 338 Mo. 230, 89 S.W.2d 670, 673 [6, 7]. In the Fitzsimmons case the prosecutor stated to the jury in his closing argument: "If I thought the evidence in this case did not warrant a conviction in this case I would dismiss it." It was held that the court did not err in refusing to grant a mistrial where the jury was admonished to disregard the prosecutor's statement.

■ In the case at bar the trial court promptly and effectively granted all the relief that was requested at the time the argument was made. The trial court did not abuse its discretion in refusing to declare a mistrial after the jury had commenced its deliberations.

We have considered all of the specifications of error for new trial and find them to be without merit. The case was well tried by the court and counsel and the defendant was given a fair trial. We have also examined the record and entries designated in Rule 28.08, 42 V.A.M.S., and find them to be in proper form and free of error. State v. Garrison, Mo., 305 S.W.2d 447, 449.

Accordingly the judgment is affirmed.

All concur.