STATE of Missouri, Plaintiff-Respondent,

v.

Raymond JOHNSON, Defendant-Appellant.

No. 35051.

Missouri Court of Appeals,
St. Louis District,
Division Two.

May 28, 1974.

James C. Jones, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., G. Michael O'Neal, Asst. Atty. Gen., Jefferson City, Brendan Ryan, Circuit Atty., James A. Roche, Jr., Asst. Circuit Atty., St. Louis, for plaintiff-respondent.

McMILLIAN, Judge.

This is an appeal from a conviction under § 560.156, RSMo 1969,[1] V.A.M.S. for stealing over fifty dollars ($50.00). The case was tried in the Circuit Court of the City of St. Louis, Missouri, before a jury who found defendant guilty and assessed his punishment at sixty (60) days in the St. Louis Medium Security Institution.

Raymond Johnson, defendant, and Roosevelt Mosley were charged jointly with stealing property of the Central Hardware Company, a Missouri corporation, of the total combined value of One Hundred eighty-seven dollars ($187.00) on July 2, 1971. Defendant was tried separately.

Defendant first claims that the trial court erred in overruling his motion for a directed verdict at the close of all the evidence because the evidence was insufficient to support a conviction.

▉ In determining the sufficiency of the evidence in a criminal case after a verdict of guilty, we accept as true all evidence in the record tending to prove the defendant guilty, whether such evidence is circumstantial or direct in nature, together with all favorable inferences that can reasonably be drawn therefrom. State v. Simmons, 494 S.W.2d 302, 303 (Mo. 1973); State v. Reed, 453 S.W.2d 946, 949 (Mo. 1970). It is not the function of this court to weigh the evidence; our review is limited to determining whether there was sufficient evidence from which reasonable persons could have found defendant guilty as charged.

With these principles in mind we set forth the evidence. The state's case tended to show that on July 2, 1971, defendant Johnson was employed as an "order filler" at the Central Hardware Company warehouse at 4200 North Union in the City of St. Louis. Defendant worked in the lumber department where orders for lumber and other products were received, pre-

pared, loaded and processed. Defendant's duties consisted of taking down the orders and directing the loading thereof. There were generally two types of orders: those which pertained exclusively to the St. Louis area and its environs ("intra-store" or "customer" orders), and "freight" orders pertaining to out-of-town customers. St. Louis orders were delivered by Central Hardware trucks, while the freight orders were delivered by outside, commercial trucking firms.

Mr. Virgil Vallowe was a lumber department supervisor at the North Union warehouse on the date in question. According to Vallowe, company procedure at that time required a truck driver who picked up a freight order to sign a "ticket" and a bill of lading once the truck was loaded and before the order left the premises. This procedure was required in order to account for merchandise going out on freight orders.

On the date in question, Vallowe testified he returned early from his lunch hour and observed a Hall's-U-Drive It truck pulled up to the warehouse and being loaded with redwood fencing. This was not the kind of truck normally used for orders, so Vallowe questioned defendant about the order when he encountered him near the truck. Defendant told Vallowe that the fencing was a freight order; but when Vallowe asked to see the papers on the order, he told him he did not have them; that the tickets were in the shipping office. Vallowe immediately inquired at the shipping office about the order, but could find no ticket or bill of lading on the order. Mr. Vallowe testified further that orders could be taken by an order filler over one of the telephones in the shipping office, but that these paperless orders had to be approved by a supervisor before being loaded.

At a conference between Mr. Massotti, Mr. Vallowe and another supervisor, defendant admitted he had directed loading

---

1. All statutory references are to RSMo 1969 unless otherwise stated.

of the fencing pursuant to a telephone order, but he had not obtained a ticket from the driver of the truck. He further told the men he did not know who had given him the order on the telephone and did not know the driver of the truck. Defendant produced a piece of paper on which he had scribbled the order, but this was the only paper Mr. Massotti saw or found on the order. Mr. Massotti determined that 20 sections of redwood fencing and 9 posts had been loaded on the truck, and that this represented a total loss of $307.00 to Central Hardware. Defendant was reprimanded for failing to comply with company rules, and Massotti reported the incident to the police that afternoon as a suspected theft.

On the following Tuesday, July 6, Mr. Massotti made further investigation of the matter, and learned from the Hall Rental Company that the suspect truck had been rented on Friday by a Roosevelt Mosley, who resided at 5874 Terry Avenue in the City of St. Louis. Mr. Massotti recognized the address as being one half of a four family flat where defendant had once lived. Massotti drove to the address and noticed a 1964 Cadillac sedan parked there, which he later learned was registered to Roosevelt Mosley.

Massotti testified that about a week later, on July 12, he was on duty and observed defendant leave the warehouse at around 10:30 A.M., and get into a Cadillac like Mosley's. Massotti recognized the driver as Roosevelt Mosley. He also observed defendant returning in the Cadillac an hour later with Mosley again at the wheel.

Detective Elbert Qualls testified that he arrested Mosley on July 11 and that Mosley confessed his participation in the theft, but denied knowing defendant. Qualls then called defendant and Vallowe to the police station in order to identify Mosley, which they did. Detective Qualls testified, however, that when he had questioned defendant at Central Hardware earlier that defendant had denied knowing a Roosevelt Mosley. Both defendant and Mosley denied any knowledge that the incident was a theft. The stolen goods were apparently never recovered.

Defendant testified in his own behalf, and acknowledged the truth of most of the facts in the state's case. However, he asserted that tickets were not always required on the orders, that he thought the bill of lading had been sent directly to the shipping office, that he was doing his job in the usual manner, and that he was not consciously responsible for the loss. He agreed the theft required employee help, but stated that he was not the guilty connection. He reiterated his position that an unknown company employee had called him on one of the shipping department phones and placed the order. Three other Central Hardware employees testified for the defense that company procedure was not always followed on the orders, and substantiated a history of personal difficulties between defendant and company management.

The case was submitted to the jury on an instruction authorizing conviction if the jury found defendant jointly participated in a theft of at least fifty dollars in property with Roosevelt Mosley. The jury returned a verdict as noted.

■ Where it is evident that the crime has been committed by at least two persons, the question is whether or not the evidence permitted a fair inference of defendant's actual participation or that he aided and abetted the principal actor. State v. Simmons, supra, 494 S.W.2d at 304. Section 556.170 provides that every person who shall be a principal in the second degree in the commission of any felony or who shall be an accessory to any felony before the fact should, upon conviction, he adjudged guilty of the same offense in the same degree. § 556.170. The statute thus eliminated all distinctions between principals in the first and second degree and aiding and abetting. State v.

Cline, 452 S.W.2d 190, 194 (Mo.1970); State v. Reed, 453 S.W.2d 946, 948 (Mo. 1970). Where the charge is one for joint participation in the criminal act, a common intent and purpose must be shown by the evidence. State v. Slade, 338 S.W.2d 802, 806 (Mo. 1960).

■ The primary question for review then is the sufficiency of the evidence from which the jury could infer this common intent, since defendant did not deny any of the acts implicating him in the theft. Presence, companionship and conduct before and after the offense are circumstances from which a defendant's participation in the criminal intent may be inferred. State v. Reed, supra, 453 S.W.2d at 948; State v. Stockdale, 415 S.W.2d 769, 772 (Mo.1967). Moreover, evidence fairly showing any form of affirmative participation in a crime is sufficient to support a conviction and it is not necessary that the defendant personally have done each one of the elements of the crime. State v. Reed, supra, 453 S.W.2d at 949; State v. Ramsey, 368 S.W.2d 413, 417 (Mo.1963); State v. Turnbough, 497 S.W.2d 856, 859 (Mo.App. 1973); State v. Lemon, 504 S.W.2d 676, 683 (Mo.App.1973).

■ A summary of the evidence showed first that defendant was acquainted with the principal actor, Roosevelt Mosley. Secondly, when questioned about the incident by Mr. Massotti and later Detective Qualls, defendant denied knowing the driver of the truck, later identified as Mosley by Virgil Vallowe. Thirdly, defendant was seen in the company of Mosley about one week after the theft occurred, so that one could reasonably infer that the relationship between him and Mosley had some currency. There was ample testimony to support the conclusion that defendant breached company procedure in loading the fencing and allowing the truck to depart without a follow-up on the necessary papers. The jury may well have found it difficult to believe the defense contention that a warehouse employee of defendant's experience would have let a shipment of merchandise leave the warehouse without knowing who ordered it, who picked it up, or where it was going. Considering all these circumstances, we believe the jury could have found it more reasonable to believe that defendant was the "inside man" in the theft, than his theory suggesting he was framed for the crime by company management.

Defendant cites State v. Castaldi, 386 S.W.2d 392 (Mo.1965); State v. Favell, 411 S.W.2d 245 (Mo.App.1967) and State v. Irby, 423 S.W.2d 800 (Mo.1968) in support of his claim of insufficiency of evidence. However, we do not believe that these cases should control here. All are distinguishable by the fact that in each, the state failed to present evidence of affirmative acts which could be attributed to the defendants. In each case, the state merely showed presence at the scene and an opportunity to participate in the crime. In the instant case, there is ample evidence of defendant's participation in some of the acts making up the theft. The circumstantial evidence was more than adequate to support the inferences drawn by the jury that he intentionally aided Mosley in the theft. We believe the evidence was sufficient to withstand the challenge on this point.

■ Defendant next contends that Instruction No. 1, the verdict-director, was prejudicially defective. A study of the record indicates that no objection was made to the instructions at trial or in the defendant's Motion for New Trial. Ordinarily, review would be foreclosed. State v. Kelley, 442 S.W.2d 539 (Mo.1969). However, defendant relies on Missouri Supreme Court Rule 27.20(c), V.A.M.R. claiming that the alleged error should be recognized as "plain error" which resulted in "manifest injustice." Our courts have frequently held that an instructional challenge grounded in Rule 27.20(c) is a "particularly appropriate" method to review the alleged error not otherwise preserved because such error goes to the essential fairness of the

trial. State v. Tindall, 496 S.W.2d 267, 268 (Mo.App.1973); State v. Randall, 476 S.W.2d 593, 595 (Mo.1972).

Instruction No. 1 informed the jury that persons who act together with common intent to commit a crime are equally guilty; an offense so committed jointly by two or more persons is the act of each and all, and that whatever anyone does in furtherance of the unlawful act is in law the deed of each of such persons. The instruction then states that in order to convict, the jury must make the following findings of fact: "First, that . . . defendant, Raymond Johnson, acted knowingly with another person. . . . Third, that the property was taken by defendant, acting alone or jointly with another person, with the intent to permanently deprive Central Hardware Company. . . ."

Defendant contends that Instruction No. 1 was erroneous because it did not submit an aiding and abetting theory to the jury. He relies on State v. Grebe, 461 S.W.2d 265 (Mo.1970) where the Missouri Supreme Court held that when one is charged as an aider and abettor (thereby becoming a principal under § 556.170), it is essential that the instruction require the jury to find that the accused intentionally aided and abetted. He claims that since State v. Grebe, *supra,* held that it is error in an aiding and abetting charge not to require that the defendant intentionally aided and abetted, it follows that it is error not to submit aiding and abetting at all. Under some circumstances this conclusion would be sound, but not here, where the state charged defendant as a *principal* acting in joint participation with Mosley, not an aider and abettor. See State v. Cook, 491 S.W.2d 324, 325 (Mo.1973); State v. Bolden, 473 S.W.2d 355, 357 (Mo.1971).

There was evidence before the jury from which the jury could reasonably find that defendant, acting jointly with Mosley, stole from Central Hardware regardless of which man was the principal actor. The state was not obliged under the charge or the proof to submit the case on the theory that Mosley did the stealing and that defendant was only assisting. State v. Bolden, *supra,* at 357. As stated previously, § 556.170 abolishes the common law distinction between principals in the first degree, accessories before the fact, and principals in the second degree. A person may become liable as a principal by aiding or abetting another or by acting with another in the actual commission of the offense. Whether or not the latter situation was true was the issue before the jury. The state claimed defendant and Mosley acted together in the act of stealing; defendant claimed he had no intent to participate in the theft at all. The issue of aiding and abetting (which defendant argues that the state's instruction ignored) was therefore *not in the case.* We hold that Instruction No. 1 was adequate to submit the issue of joint participation with common intent to steal as charged in the information. Neither the state nor the trial court was obliged to present an aiding and abetting theory to the jury. As stated previously, the evidence presented was more than adequate to support the inference that defendant was an intentional joint participant in the theft and therefore a *principal* under § 556.170. We do not find error in the giving of the instructions and therefore decline to invoke Rule 27.20(c).

Judgment affirmed.

CLEMENS, Acting P. J., and GUNN, J., concur.