STATE of Missouri, Respondent,

v.

Parry L. MORGAN, Appellant.

No. KCD 28230.

Missouri Court of Appeals,
Kansas City District.

July 6, 1976.

Motion for Rehearing and/or Transfer
Denied Aug. 2, 1976.

Application to Transfer Denied
Sept. 13, 1976.

Joe Hamilton Scott, Public Defender, Richard J. Yocum, John F. Burns, Asst. Public Defenders, St. Joseph, for appellant.

John C. Danforth, Atty. Gen., Douglas Mooney, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and SWOFFORD, and SOMERVILLE, JJ.

SWOFFORD, Judge.

In a court-tried case, the appellant (defendant) was found guilty of rape, in violation of Section 559.260 RSMo 1969 (Laws 1975), and of robbery in the first degree, in violation of Section 560.120 and Section 560.135, RSMo 1969. He was sentenced to life imprisonment on the rape conviction and to ten years on the robbery conviction, such sentences to run consecutively.

Upon this appeal the defendant puts forward three assignments of error upon which he seeks reversal of his convictions. These points may be summarized as follows: *First*, the court erred in overruling his motion for severance of the rape from the robbery charge, and in requiring him to defend each charge in one trial since the two charges were for dissimilar crimes occurring at different times. As a result of that ruling, the defendant asserts, his right to a jury trial was "chilled" due to the application of Section 546.480 RSMo 1969, which statute has since been declared unconstitutional [1]. *Second*, the court erred when it denied the defense counsel the right to argue in summation and thus denied him a fair trial, in violation of his Sixth Amendment right to assistance of counsel in his defense. *Third*, the court lacked jurisdiction of the rape charge because the information was defective in that it omitted a vital element of the charge, namely, that the rape was committed upon the victim *without her consent.*

The evidence necessary for a determination of these points may be briefly stated.

At about 10:20 o'clock p. m. on July 28, 1974, P___ W___ and her four-year-old son returned to their apartment after visiting her parents' home. She noticed that the lights were not on, and upon entering the apartment she observed ashes on the living room floor, although she was a non-smoker and did not know anyone who smoked. Turning on the lights in the apartment, she noticed that the basement door was open. Proceeding to the kitchen, she observed that the back door was unlocked and the screen door leading to the back porch was not latched. When she opened the back door in order to latch the screen, she observed a man, she screamed, and the man jumped into the apartment with a knife in his hand. The man backed her into the lighted apartment and demanded her money. He obtained $20.00 from her purse and then asked her if she could get him any "dope". She advised him of her inability to do so. He then told her he knew that she had no telephone and could not call the police, and that he would watch the apartment, and if she attempted to leave it, he would kill her. He then left the apartment through the kitchen door which she thereupon locked and went to her little boy, whom she attempted to comfort. She then went to the front room to obtain her keys and was contemplating an attempt to run for help when she heard a loud noise from the rear of the apartment. The man reentered the apartment, sat with P___ W___ and her son in the living room, held a knife to the boy and stated he was "not finished yet". He then ordered her to the bedroom, forced her to disrobe and performed oral sex on her and then raped her.

He then ordered her into the kitchen to get him a drink. She fixed him several soft drinks, which he drank, still holding the knife "at" her, and then he told her he was a "dope fiend" and wanted her to get him

1. *State v. Baker*, 524 S.W.2d 122 (Mo.banc 1975).

some more money. She agreed, and the man, the little boy and she drove to the home of her aunt. The man got out of the car and told her he would give her five minutes and if she did not return in that time, he would kill her and her son.

When P___ W___ and her son were safely inside her aunt's home, she told her aunt and uncle what had happened and the police were called. She described her assailant as a Caucasian, wearing dirty green jeans, a white button-down shirt with a T-shirt underneath, with balding black hair which partially hung in his face. She stated he was dumpy, dirty, "dark", had dark eyes and had a tic in his left eye.

The defendant was arrested one week later and P___ W___ identified him in two police lineups as her assailant. She also made positive and unequivocal in-court identification of the defendant.

Defendant's jurisdictional point (III) first demands attention because if the information is fatally defective, his other points need not be considered. This point (III) is ruled against defendant.

The substantive portion of Section 559.-260 RSMo 1969 (Laws 1975), as applicable here, states:

> "Every person who shall be convicted of rape * * * *by forcibly ravishing any woman of the age of sixteen years or upward,* shall be punished by imprisonment by the division of corrections for not less than two years." (Emphasis supplied)

■ Decisional law is clear that the essential elements of the crime of rape are (1) carnal knowledge; (2) force; and (3) the commission of the act against the will or without the consent of the woman. *State v. Deckard,* 426 S.W.2d 88, 90[1] (Mo.1968); *State v. Abron,* 492 S.W.2d 387, 388–389[1] (Mo.App.1973).

The information here charged that the defendant

> "* * * did wilfully, unlawfully, *forcibly* and feloniously *ravish* a woman of the age of sixteen years or upward, to-wit: P___ L___ W___ * * *" (Emphasis supplied)

Obviously, the information here was framed in the language of the above-quoted statute, which, as a general rule, is deemed to be sufficient. *State v. Tandy,* 401 S.W.2d 409, 413[3] (Mo.1966); *State v. Gray,* 423 S.W.2d 776, 781[4] (Mo.1968).

But the defendant asserts that since the information does not include the statement of "without the consent" or "against the will", an element of the offense under decisional law, it is fatally defective, and the inclusion of the word "ravish" does not fill this void. He states that the word "ravish" can be defined in three ways, (1) to seize and carry away forcibly; (2) to rape (a woman); and (3) to transport with joy and delight; enrapture. His argument proceeds: "If a defendant is to make a choice between the three definitions, he will have a 33⅓% chance of being correct." Only by choosing the second definition, he asserts, could he be advised of the charge of rape. This profoundly convoluted and tortuous argument is specious, and if adopted, would fly in the face of the above precedents and convert our courts into linguistic and semantic battlefields, and is, therefore, rejected.

■ It has been logically held that the term "ravish" means more than merely sexual intercourse and carries the implication and meaning of carnal knowledge by force and without consent. It is a synonymous term with "rape". *State v. Berezuk,* 331 Mo. 626, 55 S.W.2d 949, 952[8] (1932); *State v. Berry,* 361 Mo. 904, 237 S.W.2d 91, 92–93 (1951); *State v. Meinhart,* 73 Mo. 562, 567 (Mo.1881). The statutory word "ravish" is specific and not generic. *State v. Abron,* supra, at l. c. 389[6].

■ Thus, the information here is sufficient to advise the defendant of the charge against him, and he could not have been misled nor put to the risk of double jeopardy—the ultimate tests which are required to support jurisdiction. *State v. Dayton,* 535 S.W.2d 469, 478–479[18] (Mo.App.1976); *State v. Moore,* 501 S.W.2d 197, 199[3, 4] (Mo.App.1973); *O'Neal v. State,* 486 S.W.2d 206, 207[1] (Mo.1972). The information was

sufficient to confer jurisdiction on the court below and to form the basis for conviction.

The information was filed in this case on October 7, 1974, the date of defendant's arraignment. On December 23, 1974, the defendant filed his Motion for Severance of Trial of Counts of Information, which was overruled by the court. At the opening of the trial on February 12, 1975, defense counsel orally renewed the motion for severance, which was again overruled; a jury trial was waived after the defendant had been interrogated at some length as to his awareness of his right to a jury trial and the effect of such waiver.

■ As above noted, the defendant's first assignment of error is based upon the court's refusal to order a severance and separate trial of the rape and the robbery charges. His reasoning (once again somewhat obscure) seems to be that, since Section 546.480 RSMo 1969 (providing that where a person has been convicted of two or more offenses the sentences shall run consecutively) has been declared unconstitutional in *State v. Baker*, 524 S.W.2d 122 (Mo.banc 1975), his right to a jury trial was "chilled" or somehow he was forced into waiving a jury. The logic of such reasoning is, to say the least, elusive, and the facts apparent on the record belie the basic premise. It is clear from the record that the decision to waive a jury was a joint one by the defendant and his counsel, and that the defendant knowingly and voluntarily authorized such waiver.

It should be further noted that in *State v. Baker*, supra, the court remanded the case for resentencing and the exercise of the discretion of the trial judge to meet the constitutional faults of the mandatory sentencing requirements of Section 546.480 RSMo 1969. This practice has been followed since the *Baker* decision by other courts. *State v. Blaine*, 528 S.W.2d 801 (Mo.App.1975); *State v. McCollum*, 527 S.W.2d 710, 714[5] (Mo.App.1975). The record of the instant case affords no support that the trial judge acted under the compulsion of Section 546.480 RSMo 1969 in sentencing the defendant, but to the con-

trary, clearly reflects the fact that the trial judge exercised his discretion and he expressly stated that he had given consideration to the nature of the crimes, the facts and circumstances surrounding their commission, and the defendant's past record.

Further, while the court in *State v. Baker*, supra, did declare Section 546.480 RSMo 1969 unconstitutional because it foreclosed the exercise of discretion by the trial court in imposing sentence on multiple offenders, provided more severe punishment for them, and thus denied equal protection, it did not condemn the joinder of separate offenses in a single indictment or information under the provisions of Rule 24.04. On the contrary, the court held that "A defendant does not have either a federal or state constitutional right to be tried on only one offense at a time." (at l. c. 126[3]); and that Rule 24.04 is a procedural rule which permits joinder of separate offenses under the conditions therein stated, has no provision relating to sentencing procedures, and, does not "mandate any difference in treatment between those charged jointly and those charged in separate informations or indictments." Thus, the court held the Rule was not tainted with the unconstitutionality of denial of equal protection, as was Section 546.480. (l. c. 127[5]).

Rule 24.04, effective July 1, 1971, provides in pertinent part:

"All offenses which are based on the same act or on two or more acts which are part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts, or in the same count when authorized by statute. * * * "

An understanding of the present state of the law in Missouri on this point requires a review of the decisional law and the purpose of the 1971 amendment of Rule 24.04, above quoted.

In the case of *State v. Terry*, 325 S.W.2d 1, 4[3] (Mo.1959) (strongly relied upon by the defendant) the court held that "a de-

fendant may not properly be convicted at the same trial of two distinct felonies except in those instances specifically provided for by statute.", and cited a long line of earlier cases. The obvious reason for this rule was to relieve a defendant of the necessity of meeting the charges to two separate and distinct offenses at the same trial.

In 1970, the Supreme Court of the United States decided the case of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469, which involved a Missouri case where the defendant was alleged to have been a participant in an armed robbery of a poker game. Each of the six poker players was relieved of his funds. The defendant was charged with the robbery of one of the players and was acquitted. He was, however, facing separate charges and trials for the robbery of the other victims. The court clearly stated the issue to be whether the State of Missouri violated his guarantee against double jeopardy when it prosecuted him again for the armed robbery of a second victim. The issue was specifically limited to that area, the court stating, 397 U.S. l. c. 446, 90 S.Ct. l. c. 1195:

> "The question is not whether Missouri can validly charge the petitioner with six separate offenses for the robbery of the six poker players. It is not whether he could have received a total of six punishments if he had been convicted in a single trial involving the six victims. It is simply whether, after a jury determined by its verdict that the petitioner was not one of the robbers, the State could constitutionally hale him before a new jury to litigate that issue again."

The question thus defined and limited was answered by the *Ashe* court in the negative upon the basis of the collateral estoppel rule which it declared to be a part of the Fifth Amendment guarantee against double jeopardy.

The adoption of amended Rule 24.04 in 1971, "represented an effort to reconcile the 'Missouri rule', supra, the *Terry* holding, and the 'double jeopardy-collateral estoppel' holding in *Ashe v. Swenson* \* \* \*."

Concurring opinion, Donnelly, J., in *State v. Neal,* 514 S.W.2d 544, 550 (Mo.banc 1974).

In *State v. Neal,* the court approved the joinder under amended Rule 24.04, in an information of a count charging robbery first degree by means of a dangerous and deadly weapon with a count charging assault with intent to kill with malice aforethought, where both arose out of the robbery of a hardware store.

In *State v. Walker,* 484 S.W.2d 284, 286[3] (Mo.1972), it was held that amended Rule 24.04 was a procedural rule and would permit the joinder in one information of a count charging rape and two counts charging separate acts of sodomy. The defendant had been so charged, tried and convicted before the effective date of amended Rule 24.04 when such joinder was not permissible and his objection to the information and his motion to require the state to elect had been overruled. The court affirmed the convictions upon the basis that upon remand the state would be authorized, under the procedures of amended Rule 24.-04, "to retry appellant in the precise manner in which the first trial was held."

In *State v. Johnson,* 505 S.W.2d 11 (Mo. App.1974), the defendant was convicted of first degree robbery (Count I) and operating a motor vehicle without the owner's consent (Count II). The only valid issue on appeal was whether or not the trial court properly permitted the State to try both counts at one trial. The court held that where an automobile was feloniously taken and was used immediately before and after the defendant robbed another person, and where only about an hour elapsed between the time the automobile was taken and the time it was used in the robbery, the offenses were so closely intertwined in time and purpose that they were part of the same transaction and were properly joined for trial. In so holding, the court noted the similarity of Rule 8(a) of the Federal Rules of Criminal Procedure and stated, l. c. 12[1]:

> "Under this federal rule broad joinder is encouraged in the interests of more efficient administration of criminal justice but the trial court has a continuing

duty during trial to counter prejudice and order severance if necessary. *United States v. Wilson,* 140 U.S.App.D.C. 220, 434 F.2d 494 (1970). However, when the testimony and evidence of two offenses are separated by court and counsel (as was done here) and the jury can distinguish between two offenses, no prejudice results. *Hill v. United States,* 135 U.S. App.D.C. 233, 418 F.2d 449 (1968)."

In *State v. Brooks,* 513 S.W.2d 168 (Mo. App.1973), the defendant was convicted of assault with intent to maim with malice, and robbery in the first degree. On September 23, 1971, defendant, in the company of three other persons, went to visit the victim at her cousin's apartment where she was baby-sitting. Following this initial meeting, all the men left. Three discussed returning and stealing a television and tape deck from the apartment. They did return and were admitted to the apartment by the victim. There was considerable discrepancy between the testimony of the victim and a coparticipant-prosecution witness as to the number of times the three men were in the apartment and who left and reentered the apartment during the afternoon. Eventually, defendant grabbed the victim around the neck and choked her and she fainted. The coparticipant-prosecution witness testified that the three men then left the apartment but upon reaching the defendant's car, the defendant stated that he was going back up to the apartment and would meet them later on a nearby street. Shortly thereafter, he met them and blood was observed on his hand. Defendant proceeded to tell his coparticipants that he had stabbed the victim's eyes out. In ruling on the joinder issue, the court stated, l. c. 171[5]:

"Defendant also contends that, although Rule 24.04, V.A.M.R. authorizes joinder of two distinct felonies in one indictment, it does not authorize conviction on both offenses. *State v. Johnson,* 499 S.W.2d 371 (Mo.1973) approves conviction on both offenses charged jointly under Rule 24.04. The joinder was not improper here. The rule authorizes joinder of two or more offenses, even though separate and distinct '. . . which are based on the same act or on two or more acts which are part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan. . . .' The blinding of Miss Chestnut was, under the State's evidence, to prevent her identification of the robbers. Both crimes were part of a common scheme—the robbery."

■ The crimes here charged were clearly properly joined under amended Rule 24.04. All of the events occurred within the victim's home; all were linked with the defendant's attempt to obtain money both before and after the rape; the victim of the crimes was the same person; only ten or fifteen minutes elapsed between the robbery and the rape; both were acts which were inseparable parts of the same transaction or scheme; each was a separate criminal offense and by stating them in separate counts the state was not attempting to split a single crime and prosecute it in separate parts. The defendant's first assignment of error is ruled against him.

The defendant's second point is that the trial court denied him his right to a fair trial by an abridgement of his Sixth Amendment right to assistance of counsel, in that the court denied his counsel the opportunity to argue the case in summation at the close of the evidence and before the finding of guilt on each of the charges.

The factual background of this assignment of error, as disclosed by the record, is that the evidence was concluded in one day, February 12, 1975. At the end of the state's case, defense counsel moved for a judgment of acquittal on both counts and was permitted to argue both the facts and the law in support of that motion.

After very brief evidence for the defense (the defendant did not testify), counsel renewed his motion for acquittal and was again permitted to argue the law and the facts in support thereof. The court overruled the motion and immediately entered a finding of guilt on both counts and ordered a pre-sentence investigation. Thereupon, the following colloquy appears:

"MR. SOKOL (Defense Counsel): Your Honor, might I at this time note of record that I object to the Court's entering its finding of guilt before I have an opportunity to argue?

THE COURT: If you wish to request findings and conclusions, you may submit—both parties may submit suggested findings and conclusions for consideration by the Court.

MR. SOKOL: If I might complete my—

THE COURT: That should be done within 14 days.

MR. SOKOL: If I might complete my statement, I would at this time note my objection of record to the Court entering findings of guilt after the defendant merely made statements requesting a determination as a matter of law at the close of the evidence and before he is accorded an opportunity to give a closing statement.

THE COURT: If the defendant wishes, suggested findings and conclusions may be submitted, of course. It should be done within two weeks, after which time the State may also file suggestions as to findings and conclusions, if the State wishes.

MR. SOKOL: Thank you, Your Honor.

MISS CLARK: Thank you, Your Honor."

In *Herring v. New York,* 422 U.S. 853, 95 S.Ct. 2550, 45 L.Ed.2d 593 (decided June 30, 1975), the United States Supreme Court held that the Sixth Amendment's guarantee of the assistance of counsel was violated by a New York statute which gave the trial judge discretion, in a non-jury criminal trial, to deny counsel an opportunity to make a closing summation. In so holding, applying the rules stated with equal force to both court and jury trial cases, the court stated, l. c. 858, 95 S.Ct. l. c. 2553, 45 L.Ed.2d l. c. 598 [l. c. 5]:

"There can be no doubt that closing argument for the defense is a basic element of the adversary factfinding process in a criminal trial. Accordingly, it has universally been held that counsel for the defense has a right to make a closing summation to the jury, no matter how strong the case for the prosecution may appear to the presiding judge. The issue has been considered less often in the context of a so-called bench trial. But the overwhelming weight of authority, in both federal and state courts, holds that a total denial of the opportunity for final argument in a nonjury criminal trial is a denial of the basic right of the accused to make his defense."

\* \* \* \* \* \*

(L. c. 862, 95 S.Ct. l. c. 2555, 45 L.Ed.2d l. c. 600[7]):

"This is not to say that closing arguments in a criminal case must be uncontrolled or even unrestrained. The presiding judge must be and is given great latitude in controlling the duration and limiting the scope of closing summations. He may limit counsel to a reasonable time and may terminate argument when continuation would be repetitive or redundant. He may ensure that argument does not stray unduly from the mark, or otherwise impede the fair and orderly conduct of the trial. In all these respects he must have broad discretion. \* \* \* "

\* \* \* \* \* \*

(L. c. 863, 95 S.Ct. l. c. 2555, 45 L.Ed.2d l. c. 601[1d]):

"But there can be no justification for a statute that empowers a trial judge to deny absolutely the opportunity for any closing summation at all. The only conceivable interest served by such a statute is expediency. Yet the difference in any case between total denial of final argument and a concise but persuasive summation could spell the difference, for the defendant, between liberty and unjust imprisonment."

 This decision clearly declares that the right of counsel to argue (within reasonable limits) in summation is an integral part of the *very* constitutional right to counsel, even in court-tried cases. However, since *Herring* was not handed down until some four and one-half months after the trial of the case at bar, the dispositive

issue here is whether or not the principles declared in *Herring* should be given retroactive application. Certain guidelines are furnished by decisions of the Supreme Court of the United States.

In *Johnson v. New Jersey,* 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), the Supreme Court thoroughly considered the issue of retroactivity, and refused to apply such rule to the precepts of the *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), and *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) decisions. In so holding, the court stated: (86 S.Ct. 1. c. 1778[4]):

"We also stress that the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, *and the way in which these factors combine must inevitably vary with the dictate involved.* Accordingly * * * , we must determine retroactivity 'in each case' by looking to the peculiar traits of the specific 'rule in question.' " (Emphasis supplied)

The *Johnson* court noted two cases in which constitutional rules of criminal procedure were given retroactive application. One was *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), which involved the right of an indigent to counsel at trial, and the other was *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), which involved the right of a defendant to the exclusion at his trial of an involuntary confession.[2] In connection with these cases, the *Johnson* court commented:

(86 S.Ct., 1. c. 1778)

" * * * In each instance we concluded that retroactive application was justified

because the rule affected *'the very integrity of the fact-finding process'* and averted *'the clear danger of convicting the innocent.'* * * * " (Emphasis supplied)

The court further stated in *Johnson*:

(86 S.Ct., 1. c. 1778[5])

"Finally, we emphasize that the question whether a constitutional rule of *criminal procedure* does or does not enhance the reliability of the fact-finding process at trial *is necessarily a matter of degree.* * * * " (Emphasis supplied)

■ While a court, sitting as the trier of the facts, should permit counsel for the defense a reasonable opportunity to argue the case in summation (under the *Herring* rule of criminal procedure), the failure of the court here to do so does not conceivably rise to the level of error so corruptive of the "integrity of the fact-finding process" nor present such a "clear danger of convicting the innocent" as to require a retroactive application of that rule.

The state presented a strong case of direct evidence of guilt in the trial of this case; the defense counsel was permitted unlimited opportunity to argue both facts and law in support of his motions for judgment of acquittal; and, it defies legal imagination that additional argument, on the same day of trial, when the evidence was fresh in the court's mind and commanded its keen perception, could have swayed the court toward a different conclusion. For these reasons, the defendant's second point or assignment of error is ruled against him.

The judgment is therefore affirmed.

All concur.

**2.** For cases in which retroactivity application was denied, see: *Escobedo v. Illinois,* and *Miranda v. Arizona,* above noted. See also: *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), involving the Fourth Amendment exclusionary rule; *Tehan v. United States ex rel. Shott,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966), involving comments by prosecutor on failure of defendant to testify.