**STATE of Missouri,
Plaintiff-Respondent,**

v.

**John Weasley BROWN,
Defendant-Appellant.**

**No. 38316.**

Missouri Court of Appeals,
St. Louis District,
Special Division.

Dec. 13, 1977.

Motion for Rehearing and/or Transfer
Denied Jan. 18, 1978.

Application to Transfer Denied
March 13, 1978.

Robert C. Babione, Public Defender, John Putzel, Jeffrey Shank, Asst. Public Defenders, St. Louis, for defendant-appellant.

George A. Peach, Circuit Atty., Henry J. Fredericks, Asst. Circuit Atty., St. Louis, John D. Ashcroft, Atty. Gen., Paul Robert Otto, Jeff E. Schaeperkoetter, Asst. Attys. Gen., Jefferson City, for plaintiff-respondent.

GEORGE W. CLOYD, Special Judge.

Defendant John Weasley Brown appeals from his conviction for kidnapping for ransom, a felony, § 559.230, RSMo.1969, for which he received a sentence of twenty-five years. Many of the facts pertaining to the kidnapping, including defendant's participation in the abduction, are uncontroverted.

On the morning of June 19, 1975, defendant and Elbert Gibson, posing as delivery men, gained entrance to the home of Mrs. Henrietta Helein, the wife of the President of the South Side National Bank in St. Louis. Present inside the house were Mrs. Helein, her mother, Betty Herold, and her sister, Mildred Herold. Once inside, Gibson displayed a handgun, and the two men proceeded to gag, place handcuffs on, and tie the legs of Mrs. Helein and her sister. Betty Herold, the mother, was not gagged or immobilized, apparently because of her age. Mrs. Helein was placed inside a large, cardboard box, along with a cushion, towel and rosary. Her abductors sealed the box, cut holes in it to ensure easy breathing, and placed the box containing Mrs. Helein inside a van parked in front of the Helein home.

Moments after the van had pulled away from the house, appellant and Gibson pulled over to the curb and were met by Alfred Wayne King, the supposed mastermind of the kidnapping plot. King asked: " 'Do you have her?' ", to which they answered affirmatively, and King then instructed them to follow his vehicle. Several minutes later, according to appellant's testimony, the vehicles came to a stop, at which time King again approached appellant and Gibson, and gave them written instructions and an address to which they were to deliver Mrs. Helein. They parted with King, and several times while en route to the designated location inquired of Mrs. Helein as to her well-being. At one point appellant and Gibson either became confused over the directions or grew apprehensive about carrying out the plan. For whatever reason, Mrs. Helein was not taken to the given address, but was left in a vacant lot in North St. Louis. She quickly freed herself and hailed a police officer.

At approximately 10:40 a.m. the same day, George Helein, Mrs. Helein's husband, received a telephone call at the bank informing him that his wife had been abducted and that a suitcase awaiting pickup was located in the bushes outside the bank. The voice was that of a white male. The suitcase contained a ransom note demanding $300,000.00. Mr. Helein was contacted again a short time later and told he would be given forty-five minutes in which to procure the money. While the money arrangements were being made, Mr. Helein was notified his wife was in the safe custody of the police; thus the ransom money was not delivered.

Defendant claims his participation in the kidnapping scheme was obtained through duress. In support of his defense, defendant testified he was contacted by telephone by an unidentified white male, later identified as Alfred Wayne King; was told he and his family were under surveillance, and that to avoid harm to himself or his family he was to meet King the following day. At the appointed time and place, defendant was met by King, who drove up in his automobile, identified himself, and, according to defendant, stated: "Look down in the car. You see this? It's a gun. Open the door and sit down.' " As he drove

around the block, King allegedly restated his threats and commanded defendant to meet him again the following day to receive details of the plan. Defendant testified he met with King each day over a period of the next five days, during which time King gave additional instructions and gradually revealed all the details. At King's request, defendant solicited the aid of a friend, Elbert Gibson. King also stated his intention to include defendant's girlfriend, Debbie Smallwood, whose involvement allegedly would ensure defendant's complete cooperation.

Defendant testified King at no time offered to pay him money or informed him of the ransom demand. Defendant voluntarily surrendered to the police several days after the kidnapping.

Defendant raises two points in his appeal: first, that the trial court erred in instructing the jury on the issue of self-defense while refusing defendant's requested instructions on the defense of duress; and secondly, that the court erred in denying defendant's motion for judgment of acquittal because the state failed in its proof of an essential element of the offense, to-wit, defendant's knowledge of or participation in the ransom scheme. For the reasons stated, we reject these contentions and affirm the judgment.

Although the defense of duress has been considered infrequently by appellate courts

of this state, the Supreme Court in *State v. St. Clair*, 262 S.W.2d 25 (Mo.1953), stated that duress, or coercion, may constitute a defense to a criminal charge. After reviewing the great weight of authority, the court set forth the parameters of the defense: the duress, or coercion, "must be present, imminent, and impending and of such a nature as to induce a well grounded apprehension of death or serious bodily injury if the act is not done. Threat of future injury is not enough. Nor can one who has a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily injury invoke the doctrine as an excuse." 262 S.W.2d at 27–28. *See State v. Green*, 470 S.W.2d 565, 568, 570 (Mo. banc 1971) (Seiler, J., dissenting).

Once established that duress or coercion may constitute a legal defense, it becomes part of the law of the case upon which the court is required to instruct when evidence in the case so warrants.[1] Criminal Rule 26.02; *State v. Powers*, 442 S.W.2d 4, 6 (Mo.1969); *State v. Drane*, 416 S.W.2d 105, 107–08 (Mo.1967). MAI–CR, however, does not contain a pattern instruction on duress or coercion. The trial court therefore felt constrained to modify MAI–CR 2.40 (Justifiable Homicide or Use of Force in Assault Cases) and to instruct on justifiable kidnapping for ransom[2] based on lawful self-defense,[3] while rejecting defense proffered in-

---

1. Apart from appellant's argument concerning the form of the instructions actually submitted, we do not pass on the question whether the evidence of coercion in this case was sufficient to warrant the appropriate instructions.

2. In addition to this instruction and a verdict-directing instruction on kidnapping for ransom, the court gave a verdict directing instruction on the lesser and included offense of kidnapping, and an instruction on justifiable kidnapping.

3. The court instructed the jury as follows (Instruction No. 10, based on kidnapping, and substantially identical, is omitted):

 INSTRUCTION NO. 7

 "One of the issues in this case is whether the kidnapping for ransom of Henrietta Helein was a justifiable kidnapping for ransom. By 'justifiable kidnapping for ransom' is meant the kidnapping for ransom of another in lawful self-

defense. On that issue you are instructed as follows:

1. The state has the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the evidence in this case leaves in your mind a reasonable doubt as to whether the defendant acted in lawful self-defense, then you must find the defendant not guilty.

2. If the defendant had reasonable cause to believe and did believe that he or members of his family were in immediate danger of death or serious bodily harm and had reasonable cause to believe and did believe that it was necessary for him to act as he did to protect himself or members of his family from such danger, then you are instructed that he acted in lawful self-defense and must be acquitted.

3. In determining whether or not the defendant acted in lawful self-defense you should consider all of the evidence in the case.

structions which encompassed the elements of the defense of coercion as set forth in *State v. St. Clair, supra.*[4]

■ We agree with appellant that the law of self-defense, the key element of the submitted instructions, was inapplicable to the facts of this case and inconsistent with the theory of duress which appellant sought to place before the jury. Self-defense, a commonly invoked defense against criminal liability for the use of force to repel and assault or threatened use of force, is not the proper legal defense for this factual situation. Nevertheless, while the court or a lawyer could be expected to recognize the distinction between the theories of duress, or coercion, and self-defense, it cannot be

presumed members of the jury possess such an awareness. Jurors are bound to exercise their judgment concerning the evidence based upon the court's instructions on the law pertinent to the case.

In this instance, the court erroneously labeled the defense of duress as self-defense in its instruction. But the instruction correctly instructed on the defense of duress. The instructions as submitted presented the jury an opportunity to review all the evidence, including defendant's, and to judge whether defendant's conduct was justified, thus entitling him to an acquittal. This is not a case of instructions which ignore or tend to preclude consideration by the jury of a defense supported by some evidence. *See State v. Drane, supra,* 416 S.W.2d at

4. If the defendant had reasonable cause to believe and did believe that he or members of his family were in immediate danger of death or serious bodily harm and that it was necessary for him to act as he did, it is of no consequence that the appearances later turned out to be false. If he acted in lawful self-defense, as submitted in this instruction, he must be acquitted even though there was no purpose on the part of anyone to kill him or members of his family or do him or members of his family serious bodily harm."

4. Defendant proposed the following instructions:

INSTRUCTION NO. A

"One of the issues in this case is whether the defendant acted under duress. On that issue you are instructed as follows:

1. The State has the burden of proving beyond a reasonable doubt that the defendant did not act under duress. If the evidence in this case leaves in your mind a reasonable doubt as to whether the defendant acted under duress, then you must find the defendant not guilty.

2. If you find the defendant:

a) was forced into participating in the alleged act,

b) that the coercion was present, imminent, and impending,

c) that it was of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to the defendant if he did not participate in the act, and

d) that the defendant did not have a reasonable opportunity to avoid doing the act, then you are instructed to find the defendant acted under duress and must find the defendant not guilty."

INSTRUCTION NO. B

"One of the issues in this case is whether the defendant acted under duress. On that issue you are instructed as follows:

1. The State has the burden of proving beyond a reasonable doubt that the defendant did not act under duress. If the evidence in this case leaves in your mind a reasonable doubt as to whether the defendant acted under duress, then you must find the defendant not guilty.

2. If you find the defendant:

a) was forced into participating in the alleged act,

b) that the coercion was present, imminent, and impending,

c) that it was of such a nature as to induce a well-grounded apprehension of death or serious bodily injury to another, besides the defendant, if he did not participate in the act, and

d) that the defendant did not have a reasonable opportunity to avoid doing the act, then you are instructed to find the defendant acted under duress and must find the defendant not guilty."

The instructions submitted to the jury and defendant's proposed instructions present the respective theories of defense (self-defense and duress) in the form of a special negative defense. While self-defense, when properly an issue in the case, is a special negative defense, *see,* Notes on Use, MAI–CR 2.40, duress, or coercion, is an affirmative defense, according to the great weight of authority. *See State v. Green, supra,* 470 S.W.2d 565; *United States v. Stevison,* 471 F.2d 143 (7th Cir. 1972); *People v. Adcock,* 29 Ill.App.3d 917, 331 N.E.2d 573 (1975); *People v. Calvano,* 30 N.Y.2d 199, 331 N.Y.S.2d 430, 282 N.E.2d 322 (1972); *State v. Sappienza,* 84 Ohio 63, 95 N.E. 381 (1911); *Newman & Weitzer,* "Duress, Free Will and the Criminal Law," 30 So.Cal.L.Rev. 313, 321 (1957).

107. Nor is this a case of instructions so substantially incorrect as to be affirmatively misleading to the jury. *See State v. Winn*, 324 S.W.2d 637, 642 (Mo.1959). Rather, we believe the instructions defined and explicated the term "self-defense" in such a way as to allow the jury to consider the evidence supportive of the theory of duress, or coercion, advanced by defendant. *See State v. Henderson*, 530 S.W.2d 382, 387[6] (Mo.App.1975). We do not find the erroneous legal label to be prejudicial to the defendant as the instructions required the jury to consider duress by whatever name it was erroneously called.

 Defendant also cites error in the trial court's refusal to grant his motion for judgment of acquittal inasmuch as the state failed to produce evidence of defendant's knowledge of or participation in the ransom scheme, a necessary element to prosecution under § 559.230. *Bullington v. State*, 459 S.W.2d 334, 341 (Mo.1970). In determining this issue we consider as true the evidence favorable to the state and the favorable inferences to be drawn therefrom, and we reject evidence to the contrary. Our function is not to substitute our judgment for that of the jury. *State v. Nichelson*, 546 S.W.2d 539, 542 (Mo.App.1977). After reviewing the record, we conclude the evidence was sufficient to make a submissible case and to support the finding of the jury.

The evidence of ransom in this case is clear—the telephone calls to Mr. Helein by a man whose voice was that of a white male with a northern accent (defendant is a black youth, age nineteen), and the ransom note itself. It is true there is no direct or circumstantial evidence linking defendant to either the telephone call or the making or delivery of the ransom note. Moreover, defendant disclaims any knowledge of the ransom demand as well as any agreement or understanding between him and King regarding payment of money.

Where, as here, it is evidence that the crime has been committed by more than one individual, our attention must focus on whether an inference of common intent and purpose may fairly be drawn from the evidence. *State v. Johnson*, 510 S.W.2d 485, 488–89 (Mo.App.1974). Defendant's own testimony implicates him in the kidnapping, and although he denies participation in the ransom scheme, it is not necessary that defendant personally performed all the acts which together comprise the elements of the offense. *State v. Reed*, 453 S.W.2d 946, 949 (Mo.1970). The undisputed evidence showing defendant's affirmative participation in the crime is sufficient in this case to support an inference of common intent and purpose, and thus defendant's conviction. *State v. Reed, supra; State v. Johnson, supra.*

Judgment affirmed.

McMILLIAN, SMITH and GUNN, JJ., and MILTON SAITZ, Special Judge, concur.