STATE of Missouri, Plaintiff-Respondent,

v.

Jerry Paul EASTON, Defendant-Appellant.

No. 10822.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 16, 1979.

Motion for Rehearing or Transfer to Supreme Court Denied March 8, 1979.

Application to Transfer Denied April 10, 1979.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Kirby W. Patterson, Springfield, for defendant-appellant.

MAUS, Judge.

This sordid tale involves an armed robbery of, an act of sodomy on, and an attempt to murder the 70 year old proprietress of a motel in Springfield, Missouri. Two young men, defendant and one David Rezabek, set in motion the events which culminated in these degenerate acts. After

consolidation, the defendant was tried upon an amended information charging him in separate counts with these three offenses. He testified in his own defense and admitted his participation in the robbery, but denied his involvement in the sodomy and attempted murder. The jury found the defendant guilty on all counts and fixed his punishment as follows: armed robbery—50 years; sodomy—25 years; attempted murder—10 years. He was sentenced in accordance with the verdicts, to run consecutively. The defendant asserts error in the consolidation for trial and joinder of the three offenses, the instructions and attacks the sufficiency of the evidence to support the instructions on sodomy and attempted murder. The latter requires a summary of the evidence, which in view of the verdicts will be reviewed most favorably to the state, with all reasonable inferences therefrom. *State v. Sloan*, 548 S.W.2d 633 (Mo.App. 1977).

One of the principal factual disputes involves the identity of which of these two men personally committed the act of sodomy and attempted murder. They are remarkably similar in appearance, each about 5'9" tall, weighing 160 pounds, with light brown or blond hair. The witnesses agreed they looked alike. Pictures before this court also establish that to be true.

The victim testified that on May 14, 1977, at approximately 10:15 p. m. a young man with a cap entered the motel office and after a pretense of inquiring about a room stuck a gun in her side. (This person will be referred to as the attacker). The attacker took the lead throughout the affair. About this time, another man, appearing to be unarmed, entered. (This person will be referred to as the second man). The second man upon instructions from the attacker went outside to turn off the vacancy sign. They then took money from her business billfold. She was then escorted to her adjoining living room. Her hands were tied behind her back. The attacker told the second man to get more tape. The second

man replied that was all they had. More money was taken from her personal billfold. She was then ordered to the bedroom and told to lie down. The attacker directed the second man to cut the phone cord. The second man did so and used it to tightly tie her legs at the ankles. She was then gagged with Kleenex from her dresser and tape. She did not know who did this. The attacker then tore off her clothes and manually sexually abused the victim. During this time the second man was going through the jewelry boxes on the dresser in the same room. The attacker asked if he got any and the second man replied "some". The attacker said the victim was not cooperating and directed the second man to "get the ether". She did not know if the second man left. The gag was removed and the attacker then forced the victim to commit an unsuccessful act of oral sodomy. When the victim got sick the attacker told her because she did not cooperate he would have to kill her. The attacker called for more Kleenex. Three wads of tissue were placed in her mouth and she was re-gagged. The attacker then smothered her with a cloth toilet seat cover until she lost consciousness. Two guns were introduced in evidence, a .22 and a 9mm. She identified the 9mm as looking more like the gun used by the attacker. On cross-examination, she admitted it was possible the companion left the room and came back with the Kleenex. It was established the total time involved was 20 to 30 minutes.

On identification: At the trial the victim stated she did not know which of the two men was the attacker. She did state the attacker was the one with the gun and with the cap. Defendant and Rezabek were apprehended in Collinsville, Illinois, on May 16, 1977. On May 17, 1977, officers took the victim to Collinsville where out of five pictures she identified pictures of defendant and Rezabek and made a definite statement that defendant was the attacker and Rezabek was there and assisted to some extent. However, at defendant's preliminary hearing held June 23, 1977, she stated defendant

came in second, he went out to see about the sign, the other was the leader, and that defendant was not the one that assaulted her. Before the trial opened she picked the picture of Rezabek as the attacker. The victim was characterized as forgetful. She was nervous and upset at the preliminary hearing. At the trial she could not identify a picture of the defendant who was then seated in the courtroom.

When apprehended, defendant attempted to flee with the 9mm gun in a shaving kit. Rezabek attempted to flee with the .22 in his waistband. On May 17, 1977, defendant stated to the officers he participated in the robbery, was armed with the 9mm gun, planned the robbery and was the leader.

Defendant testified both guns were in his possession before the robbery. During the robbery Rezabek had the 9mm and used it. The .22 was in defendant's waistband and not used. He stated Rezabek was wearing a cap and went in first. He turned on the no vacancy sign. When they went into the living room, he tied her hands with tape and then went to the car for more which he did not find. On his return, per Rezabek's instructions, he cut the phone cord and tied her feet. He then went to the car and waited 4 or 5 minutes for Rezabek. He didn't go back because he was afraid of what he might find; Rezabek had been known to bust things up. He denied the sexual attack and smothering. He said Rezabek told him a few hours after the incident the victim had been "messed up a little", but didn't learn of the sexual attack until after he was arrested. He first denied that he gave the officers in Collinsville an alias, but on further cross-examination admitted he did. He first said he didn't know if he told the officers he had the 9mm gun at the time of the robbery because he was high on marijuana. Then he testified "what I said the day before I stuck to for fear of making things worse than the pot". He also testified he said he had the 9mm because he didn't know of the sexual attack.

■ The defendant does not question the power of the court to consolidate these offenses for trial. *State v. Williams*, 554 S.W.2d 524 (Mo.App.1977). Rule 24.04 reads as follows:

"All offenses which are based on the same act or on two or more acts which are a part of the same transaction or on two or more acts or transactions which constitute parts of a common scheme or plan may be charged in the same indictment or information in separate counts, or in the same count when authorized by statute. Any indictment or information may contain counts for the different degrees of the same offense or for any one of such degrees." V.A.M.R. Crim. Rule 24.04.

The rule has been approved against constitutional attack. Severance before and during trial is within the discretion of the trial court. *State v. Baker*, 524 S.W.2d 122 (Mo. banc 1975); *State v. Duren*, 556 S.W.2d 11 (Mo. banc 1977).

■ The defendant, with due respect for the trial judge, fervently asserts the trial court abused its discretion in consolidating the offenses of armed robbery, sodomy and attempted murder. The basic thrust of his claim of error is that he received a greater punishment for the confessed offense of armed robbery than he would have received had not that offense been joined with what he terms the more heinous offenses of sodomy and attempted murder. As a secondary attack, he asserts he was found guilty of the disputed offense of sodomy and attempted murder on questionable evidence because those offenses were joined with the admitted offense of armed robbery.

His assertions are premised upon speculation concerning the inner thoughts of the jury and their inability to follow the instructions of the court. Defendant's assertions are easily countered by contrary speculations. Had the defendant been charged separately, in the absence of the imposition of a 50-year sentence for armed robbery, a jury could well have awarded a 50-year or

greater sentence for sodomy. The same person committed the sodomy as committed the attempted murder. Any speculation that the 25-year sentence for sodomy resulted from doubt about the identity of the perpetrator is quickly dispelled by the maximum punishment of ten years given by the jury for attempted murder.

Defendant also claims an abuse of discretion in joinder because the trial of defendant for armed robbery would have been a simple trial requiring only his confession. He overlooks his plea of not guilty to this charge. His non-judicial admission of robbery could have been recanted, requiring two full blown trials. Had defendant really wanted a separate trial for sodomy and attempted murder, this would have resulted from a guilty plea to armed robbery. Because his strategy in the trial court was not satisfactory, he should not now be heard to complain.

The jury was instructed that each offense and the evidence and law applicable to it should be considered separately. We must consider that they followed their instructions. See *State v. Minor*, 556 S.W.2d 35 (Mo. banc 1977). Joinder of the following offenses has been approved: armed robbery and assault with intent to kill, *State v. Neal*, 514 S.W.2d 544 (Mo. banc 1974); murder and robbery, *State v. Baker*, supra, 524 S.W.2d 122; rape and robbery, *State v. Morgan*, 539 S.W.2d 660 (Mo.App.1976); *State v. Perkins*, 543 S.W.2d 805 (Mo.App. 1976). *State v. Prier*, 561 S.W.2d 437 (Mo. App.1978) cited by defendant involved three separate drug sales to the same officer over a period of three months and is not applicable to the facts of this case. Broader joinder is encouraged. *State v. Williams*, supra, 554 S.W.2d at 524. The defendant has not demonstrated that the trial court abused its discretion in joinder of those three offenses which occurred within 20 minutes and we find that it did not. *State v. Duren*, supra, 556 S.W.2d 11; *State v. Lee*, 556 S.W.2d 25 (Mo. banc 1977). Also see *United States v. King*, 453 F.2d 9 (1st Cir. 1972).

■ In his brief defendant makes the general point that the instructions did not properly set out the elements of the offenses and were confusing and misleading to the jury. The defendant does not specify in what respects the instructions do not set forth the elements of the offenses. We have examined the instructions against this general assertion and find no error. Defendant's argument that the instructions are confusing is directed to the instructions concerning sodomy and attempted murder. While this point is not made with the required specificity, *State v. Watson*, 511 S.W.2d 890 (Mo.App.1970), it will be considered.

By Instruction No. 6 the trial court told the jury it could find the defendant guilty of sodomy if it found, first, "the defendant or another" committed the act of sodomy; and second, "that the defendant acted either alone or knowingly and with common purpose together with another" in the conduct referred to in the above paragraphs. A similar instruction was given in regard to the attempted murder. The gist of defendant's complaint seems to be that these instructions permit the jury to find the defendant guilty if he personally committed the acts or acted jointly with the one who did and that such an alternative submission is error.

■ By reason of § 556.170, RSMo 1969, the distinction between principals in the first degree, accessories before the fact and principals in the second degree has been abolished. One may become liable as a principal by aiding or abetting another or by acting with another in the actual commission of the offense. *State v. Bolden*, 473 S.W.2d 355 (Mo.1971). In this case the state by instructions submitted that defendant committed the offenses or was an active participant in the offenses.

In the information, the defendant was charged as a principal. It is proper to submit active participation or aiding and abetting even though he was so charged. *State*

v. *Butler*, 534 S.W.2d 832 (Mo.App.1976); *State v. Braddock*, 558 S.W.2d 776 (Mo.App. 1977); *State v. Spica*, 389 S.W.2d 35 (Mo. 1965), cert. den. 383 U.S. 972, 86 S.Ct. 1277, 16 L.Ed.2d 312 (1966); *State v. Lunsford*, 331 S.W.2d 538 (Mo.1960).

■ Defendant is critical of the use of the word "another" in the first and second paragraphs of the instructions. The state could have used instead the name David Rezabek. However, the use of the term "another" is permitted by MAI–CR 2.12. There were only two persons at the scene and the jury could not have been misled as to the person referred to in the instructions as "another". There was no error in the use of this term. *State v. Amrine*, 548 S.W.2d 244 (Mo.App.1977); *State v. Johnson*, 510 S.W.2d 485 (Mo.App.1974); *State v. Johnigan*, 494 S.W.2d 23 (Mo.1973); *State v. Bolden*, supra, 473 S.W.2d 355.

■ Defendant insists that for the defendant to be properly found guilty as a joint participant or an aider and abettor there must have been evidence of his intent that the offenses be perpetrated and this issue submitted to the jury. In this he is correct. *State v. Grebe*, 461 S.W.2d 265 (Mo. banc 1970). The evidence of defendant's intent will be dealt with later. By the verdict directing instructions the jury was required to find the defendant acted knowingly and with common purpose. The court also gave Instruction No. 10 which was MAI–CR 2.10. This was sufficient. *State v. Macon*, 547 S.W.2d 507 (Mo.App.1977); *State v. Johnson*, supra, 510 S.W.2d 485.

Returning to the defendant's underlying complaint of the alternative submission, such an instruction is proper and indeed necessary where it is not known which of several persons committed the ultimate physical act. Such a submission is authorized in MAI–CR 2.12. By the instruction the jury was required to find either one set of circumstances or another, under either of which the defendant would be equally guilty. A similar instruction has been approved with the following comment:

"Even though the evidence tended to prove that the defendant was the actual killer, it is not inconsistent or misleading for the state to instruct on the theory that the defendant was an aider and abettor as well as the actual killer because the greater participation in the offense includes the lesser and the legal effect is the same." *State v. Lunsford*, supra, 331 S.W.2d at 541. Also see *State v. Davis*, 506 S.W.2d 33 (Mo.App.1974).

There was no error in this instruction.

■ Of course, since the state submitted on alternative theories, there must have been evidence to support each theory. Concerning the evidence tending to show the defendant as the principal actor, three days after the event the victim, without equivocation, identified the defendant as her attacker. She later was unable to do so, but her initial identification is some evidence of his guilt. *People v. Gould*, 54 Cal.2d 621, 7 Cal.Rptr. 273, 354 P.2d 865 (1960). The victim never wavered in her testimony that her attacker was the man with the gun, the leader. She identified the 9mm as the gun used. The defendant admitted his use of the gun and that he was the leader. The jury could consider as even more damning his elusive, contradictory testimony attempting to evade his admissions. The jury could believe such of defendant's testimony as it chose, *State v. Pinkus*, 550 S.W.2d 829 (Mo.App.1977), and could have found defendant was the principal actor.

■ To establish the defendant's responsibility as a joint principal, it is not necessary for the state to establish that he personally committed each act involved in the offense. "The presence of the accused at the place of the commission of a criminal offense may be considered along with other incriminating evidence to determine if the total circumstances raise a reasonable inference that the accused was a participant or an aider or abettor in the crime." *State v. Cobb*, 444 S.W.2d 408, 412 (Mo. banc 1969). It is sufficient that he affirmatively did some act. "Evidence fairly showing any

form of affirmative participation in a crime is sufficient to support a conviction." *State v. Cobb*, supra, 444 S.W.2d at 412; *State v. Johnson*, supra, 510 S.W.2d at 485.

 Nor is it necessary that the state establish the defendant's intent as a joint principal by direct evidence of that intent. Such intent may be inferred. *State v. Sloan*, 548 S.W.2d 633 (Mo.App.1977).

The jury could have found the defendant was a joint principal based upon the following facts which a jury could find and infer from the evidence. The defendant planned the robbery; he accompanied the victim to the bedroom; while she was on the bed he tied her ankles tightly; he remained in the room during the sexual attack; his presence lent coercive effect to the attacker's threat to get the ether, after the sodomy and after the attacker said he would have to kill the victim because she didn't cooperate, he handed the attacker additional Kleenex with which the victim was gagged, and immediately thereafter the attempted smothering took place. All of this was indicative of his willingness to participate and aid in the assault upon the victim.

In addition, the evidence of defendant's and Rezabek's activities before and after the offenses was a substantial basis for the inference of participation and criminal intent. "Presence, companionship and conduct before and after the offense are circumstances from which a defendant's participation in the criminal intent may be inferred." *State v. Johnson*, supra, 510 S.W.2d at 489.

The defendant was earnestly and ably represented by appointed counsel at the trial and by different appointed counsel on appeal. He was accorded a fair trial. The judgment is affirmed.

BILLINGS, P. J., and HOGAN, J., concur.